RANDALL, respondent, *v.* GREENHOOD ET AL., appellants.

PRACTICE — *question raised by general exception.* A general exception to leave granted to amend a pleading only raises the general question as to the authority of the court to allow amendments of pleadings during the progress of a trial. This power cannot be disputed.

Immaterial errors of ruling will not reverse a judgment. Though the record shows that the court below erred in allowing leading questions to be put to witnesses, or in disallowing questions proper under some circumstances, yet judgment will not be reversed therefor, if it is apparent from the whole record that appellants have not been injured thereby.

MEASURE *of damages.* When goods are attached and sold by the sheriff the proper measure of damages is the value of the goods at the time of the attachment, and not what they brought at auction.

PRACTICE — *how exceptions must be saved.* The appellate court will not regard exceptions unless they are taken in substantial compliance with the statute. Such exceptions must be reduced to writing, be signed by the judge and filed with the clerk before the submission of the cause to the jury.

INTEREST — *unliquidated demands — interest depends entirely upon statute.* It is not allowed by the statute of Montana on unliquidated demands before judgment. If, contrary to statute, a jury has allowed such interest and it has been included in the judgment, it must be stricken out before the same is affirmed.

*Appeal from First District, Gallatin County.*

E. W. & J. K. TOOLE, for appellants.

Amendments allowed were inserted in the margin of the orig-

inal pleading, and there was no new verification. The question of taking *immediate* possession was a mixed question of law and fact, partly for the court and partly for the jury, and was improper to allow in a leading question. If the question is proper in itself the court will not speculate as to the effect of its answer on the jury.

The following authorities were cited for appellants : 44 Cal. 246 ; 40 id. 246 ; 39 id. 609 ; 14 id. 460, 492.

VIVION & PIERCE, and CHUMASERO &. CHADWICK, for respondent.

No exception was taken on the ground of want of verification of pleadings. The amendments did not affect the substantial rights of the parties.

No injury resulted from questions complained of; the matters were sufficiently proved by other evidence.

A judgment will not be reversed on account of erroneous testimony unless appellant suffered injury thereby. *Moon* v. *Rollins*, 36 Cal. 333 ; *Mott* v. *Reyes*, 45 id. 379 ; *Hastings* v. *Jackson*, 46 id. 234.

It is for the court to say what is proper cross-examination. *Rea* v. *Missouri*, 17 Wall. 542. See, also, 22 Cal. 255; 29 id. 160; 12 id. 483; 28 id. 187, 406.

Exceptions must specify errors complained of, or they will be disregarded. *Simonton* v. *Kelly*, 1 Mon. 363; *Caldwell* v. *Murphy*, 11 N. Y. 417.

The exceptions were not taken and completed as required by statute. See Cod. Sts. (1872), § 253.

When property converted has a fixed value, the measure of damages is that value with interest from time of conversion. *Hamer* v. *Hathaway*, 33 Cal. 117; 9 id. 562 ; *Bohm* v. *Dunphy*, 1 Mon. 333; *McGavock* v. *Chamberlain*, 20 Ill. 219.

WADE, C. J.   This is an action to recover the value of a certain stock of goods alleged to have been wrongfully converted by appellants.

The record shows that on the 4th day of May, 1878, Messrs. Black & Daniels, merchants, doing business at Bozeman, Gallatin

county, sold their stock of goods and a large amount of other property, to the respondent for the sum of $15,000, and the respondent after deducting from the sum of such purchase-money, $770, the amount he was owing them, executed his note to them, payable one day after date for the sum of $14,230, and as is alleged, took immediate possession of such goods and property.

It further appears that the appellants being creditors of Black & Daniels at the time of such sale, and on the 14th day of May, 1878, commenced an action against them and attached the goods in question, charging that the sale to respondent by Black & Daniels was fraudulent and made to hinder, delay and defraud creditors. They obtained possession of the goods by virtue of their attachment and converted the same. This action was instituted to recover the value thereof. There was a trial and verdict in favor of respondent for $3,600, and judgment thereon from which this appeal is taken.

There were many exceptions taken during the trial, and we will consider such ones as the appellants rely upon in their brief for a reversal of the judgment.

1. The record shows that the appellants, before the trial commenced, made a motion for judgment on the pleadings which was overruled, and thereafter and during the progress of the trial they asked and obtained leave to amend their answer. Whereupon the respondent asked and obtained leave to amend his replication, to the granting of which leave the appellants excepted, but for what reason the record fails to show. The exception being general, it only raises the general question as to the authority of the court to grant leave to amend pleadings during the progress of a trial. The power of the court to grant leave to either party to amend pleadings during the progress of the trial, and even after verdict and judgment in furtherance of justice, is as well settled and so deeply imbedded in the Code practice as to need no authorities to support it. We will only refer to some of the decisions of this court. See *Wormall* v. *Reins*, 1 Mon. 627; 2 id. 415.

2. The respondent, being a witness in his own behalf, was asked

the following question: "State whether or not, at the time of the sale and purchase between you and Black & Daniels, you went into the immediate possession of the property and continued so?"

This question was objected to, not so much because it was leading, as because it involved a question of law improper for the witness to answer. The objection was overruled and the appellants excepted.

The question being tried was whether, at the time of the sale, the respondent openly and actually took immediate possession of the goods. In this connection the word "immediate" has no technical or special meaning. It is used in its ordinary sense in the statute.

It signifies, *present, instant, not deferred by an interval of time,* and the question is of the same import as if the witness had been directed to state the facts as to the transfer of the possession, and had answered that at the time the sale was made, the respondent instantly and without any interval of time went into the possession of the property.

Perhaps the form of the question suggested the answer. If this was so, and if technically and strictly the form of the question was improper, yet we cannot see how the appellants could have been injured by the inquiry.

They had the power upon cross-examination to have inquired into all the facts and circumstances attending the transfer of possession. This inquiry opened the door to such cross-examination, aided by the searching power and force of direct leading questions. It is very apparent that the appellants could not have been injured by this question and answer.

3. Z. H. Daniels, being one of the parties to the sale from Black & Daniels to respondent, testified on his examination in chief, concerning such sale and that respondent gave his note for $14,270, and took immediate possession of the goods. On cross-examination the witness was asked this question: "What was done with the note of Randall after it was given to you?" which was objected to by respondent as not cross-examination, and the objection sustained.

In cases of fraud wide latitude is given to a cross-examination.

Was the sale sham and fraudulent? Was it made to hinder and delay creditors? The execution and delivery of the note had a bearing upon these questions and was competent proof tending to show the *bona fides* of the transaction. Did the respondent really and in good faith give his note for the purchase-price of the goods? Or was its execution a mere blind to cover up a fraudulent sale? The witness having testified in support of the sale, that the note was given, it became competent, on cross-examination, to draw out all the facts and circumstances attending such execution. Was the note given to Black & Daniels, and by them fraudulently returned to respondent? Or did they place it in the hands of a third person for his protection and benefit? All these matters belonged to the case of appellants, but the witness having given in evidence the execution of the note as tending to show the good faith of the sale, it became competent, on cross-examination, to show how the note was disposed of immediately after its execution, if the inquiry was made to show fraud in the transaction. The purpose of the inquiry is not disclosed in the record. We have no means of knowing what the appellants proposed to prove by making the inquiry. The answer to the question might have been competent, or it might not. The appellants ought to have stated and placed in the record what they proposed to prove. Then this court could have passed upon its competency.

But if, by the question and the answer sought, the appellants proposed to prove that the execution of the note was a sham and fraudulent, were they injured by the action of the court in sustaining the objection to the question? Evidently not, for when they came to present their case to the jury they might have placed Daniels on the stand and asked him in precisely the same words, the question they had asked him on cross-examination. Making the witness their own would not have forfeited any of the advantages a cross-examination gave them in such a case, where the inquiry on cross-examination would have been competent upon an examination by them in chief. And so, if the objection to the question had been improperly sustained, none of the substantial rights of appellants were thereby affected, and in such a case, under the provisions of the Code, a judgment should not be reversed.

4. The goods levied on by the attachment in favor of appellants in this action against Black & Daniels were sold at auction by the sheriff. The measure of damages was the value of the goods at the time of the levy of the attachment, and not what they brought at auction as contended for by appellants.

5. Counsel for appellants contend that instruction No. 5, given to the jury at the instance of respondent, was incorrect. The record shows that no exception was taken to instruction No. 5, and that there was no attempt to save an exception thereto.

The Code provides (§ 253) : "If any party to the trial desires to except to any instruction given by the court, or to the refusal of the court to give an instruction asked for, or any modification thereof, he shall reduce such exception to writing and file the same with the clerk before the cause is submitted to the jury." This section contemplates that the exception to instructions shall be reduced to writing in a bill of exceptions (which of course must be signed by the judge) and filed with the clerk before the cause is submitted to the jury. Not one of the exceptions to the instructions, as shown by the record, comply with these requirements. The mere statement of the record that the court was asked to give certain designated instructions, which were refused and an exception taken, or that the plaintiff objected to the giving of certain instructions that were afterward given, to the giving of which, the party objecting excepted, without reducing such exceptions to writing, and filing the same with the clerk, is no compliance with this section of the Code.

As to instruction No. 3, asked for and given at the request of respondent, which, from its substance, is presumed to be the one referred to by counsel as instruction No. 5, the record recites as follows : " And the said defendant objected to the third instruction, requested by the plaintiff for that the same," etc., " and the said objection was overruled, and to which ruling and giving of said instruction, defendants then and there excepted."

Whether the statement was reduced to writing before the cause was submitted does not appear, and it certainly does not appear to have ever been filed with the clerk.

We cannot regard exceptions that have not been taken and

saved in substantial compliance with the statute.    If an exception to an instruction should be reduced to writing and signed by the judge, if not filed with the clerk before the submission of the cause to the jury, it could not be considered.

6. In this action respondent sought to recover from the appellants certain property alleged to be wrongfully withheld by them, and in case a return could not be had, the value thereof.    The verdict finds for the respondent and for a return of the property mentioned in the complaint, and in the event the same cannot be returned, assesses his damages at $3,000, the value of the property, and $600 interest thereon from the date of the levy to the time of trial.

The claims and demands upon which interest is allowed depend entirely upon the statute.    This claim or demand of respondent against appellants is not of the kind upon which interest can be allowed until after judgment.    See Cod. Sts. 497, § 2 ; *Isaacs* v. *McAndrew*, 1 Mon. 454.

The judgment is too large by $600.    It is therefore ordered that the judgment be reduced from $3,600 to $3,000, and when so modified, the same is hereby affirmed with costs.

*Judgment affirmed.*