NELSON MORRIS

v.

PIERRE WIBAUX.

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

1. SALES—*by description—what warranty is implied.* A warranty arises, in sales by description under a written contract, that the goods will correspond in quality and kind to the description.*

2. SAME—*refusal of purchaser to complete sale—re-sale of property.* A re-sale of property to fix the amount of damages which a purchaser who refuses to accept the property must pay, need not be made by the seller as agent of the purchaser, but is sufficient if made after notice to the latter, within a reasonable time, and in a way to obtain the fair market value.

3. EVIDENCE—*burden as to identity and as to quality of property sold.* The *identity* of property sold by description, being the subject matter of the performance of the contract, must be proved by the seller in an action for the price; but a breach of a warranty of the *qualities* of the property is a matter of defense, on which the buyer has the burden of proof.

4. CONTRACTS—*when estimated number of things sold does not control.* An estimate of the number, more or less, of the cattle sold, does not control the other language of a contract which expressly calls for the sale of all the cattle of certain kinds on certain ranches.

5. SAME—*effect of failure of part of things sold to fulfill the contract.* Shipping certain cattle that do not fulfill the requirements of a contract with others that do, will not justify the purchaser in refusing other cattle subsequently shipped, if they comply with the contract requirements, where the contract provides for shipment at different times, to be paid for as fast as delivery is made.

6. SAME—*the entirety of a contract depends on intention of parties.* The entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject matter or the mode of measuring the price.

7. CONFLICT OF LAWS—*interest on purchase price of property—what law controls.* Interest on purchase money for property delivered in the State where the contract of sale was made may be recovered in accordance with the statute of that State, when it is pleaded and proved, although the action is brought in another State.

---

*On the subject of implied warranty in sales by description, a collection of the authorities may be found in a note to *Murchie* v. *Cornell*, (Mass.) 14 L. R. A. 492.

8. TRIAL—*when reasonable time is a question of law.* What is a reasonable time is a question of law where the facts are undisputed or admitted, but is a question of fact when it depends upon controverted points or the motives of the parties.

9. APPEALS AND ERRORS—*finding of Appellate Court as to reasonable time—when conclusive.* The finding by the Appellate Court on the question of reasonable time, in an action for the price of cattle, is conclusive upon this court when the question is one of fact.

10. SAME—*when error in refusing instruction is rendered harmless.* Error in refusing an instruction as to the burden of proving compliance with a contract is rendered harmless by a finding on the facts that the contract was complied with.

11. SAME—*findings of fact by Appellate Court—when proper.* Findings of fact by the Appellate Court may be incorporated into the record when differing, in part, from the findings of the trial court.

*Morris* v. *Wibaux,* 47 Ill. App. 630, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

The parties to this action entered into a contract hereinafter set out. Appellee seeks to recover from appellant the contract price for cattle delivered in September and not paid for, which claim is made under the common counts of his declaration. By an additional special count he seeks to recover interest at ten per cent, from September 7, 1890, under the Montana statute, on the contract price of such cattle so sold and delivered, and by two other special counts a recovery is sought to be had for damages alleged to have been sustained by reason of appellant's refusal to receive cattle on hand September 9, 1890, which appellee claims appellant ought to have received under the contract. To the common counts appellant pleaded general issue and set-off. To the special counts the general issue was pleaded.

Prior to September 5, 1890, appellee had delivered, and appellant had received and paid for, 1293 steers and 3232 cows. September 5, 6 and 7 appellee delivered to appellant 1072 steers and 370 cows. These cattle were

received by appellant, shipped to Chicago, and have not been paid for. On September 9, 1890, appellant notified appellee that he, appellant, would receive no more cattle.

The action upon the contract is to recover, first, the contract price for the 1072 steers and 370 cows delivered at the September delivery, and not paid for; and second, to recover damages claimed to have been sustained by appellee by reason of appellant's refusal to receive 1120 steers and 1127 cows which appellee claims to have had on hand on September 9, 1890, and which he claims appellant ought to have received under the contract. Of these cattle which appellant refused to receive, appellee claims to have re-sold, between September 9 and November 10, 708 steers and 762 cows. The balance, viz., 412 steers and 365 cows, he claims to have had on hand on November 10, 1890.

The pleas were *non assumpsit* and set-off. Trial by the court without a jury, and finding for the plaintiff in the sum of $54,515.90. It appears this finding was had by charging appellant with balance for cattle delivered in September, $45,435, and with $9532.75 loss on the 708 steers and 762 cows shipped and sold by appellee after appellant's refusal to receive, and with $5801.66 difference between contract price and market value of 412 steers and 365 cows held and on hand November 10, and allowing a reduction of $6253.41 by reason of certain cattle shipped by appellee and certain cattle on hand November 10 failing to be of a quality required by the provisions of the contract. Much testimony was heard on the trial, the evidence comprising about five thousand type-written pages, and propositions of law nineteen in number were asked to be held by the plaintiff and forty-nine in number were asked to be held by the defendant. A motion for a new trial was overruled and an appeal prosecuted to the Appellate Court for the First District, where there was a special finding of facts and judgment by that court as follows:

"The court having examined the transcript of record of the court below herein, and considered the errors assigned by the appellant and the cross-errors assigned by appellee, and the arguments of the attorneys for the respective parties, finds from the evidence contained in the record the following facts: That on the 21st of June, 1890, at Miles City, in the State of Montana, the appellant and appellee entered into the following contract:

"'This agreement, made and entered into this 21st day of June, A. D. 1890, by and between Pierre Wibaux, of Mingusville, in the county of Dawson and State of Montana, party of the first part, and Nelson Morris, of Chicago, in the county of Cook and State of Illinois, party of the second part:

"'*Witnesseth:* That said party of the first part hereby sells and agrees to deliver unto party of the second part all of his steers from three years old and up now on his range between the Little Missouri and the Yellowstone rivers, estimated at about 3500 head, more or less, branded and marked W (W bar) on the right side and on both sides; also all of the steers from three years old and up to be delivered by the Green Mountain Stock Ranching Company, under their contract with said Pierre Wibaux, known as the ꓵF (FUF) brand; and also all of the four year old steers and up to be delivered by the Powder River Cattle Company, under their contract with said Pierre Wibaux, known as the 76 brand,—said steers, as above enumerated, to be good merchantable cattle, with no stags, cripples or big jaws among them. And in addition to the above described steers, said party of the first part also hereby agrees to sell and deliver to party of the second part all of his dry cows now on his range above mentioned, and also all the dry cows to be delivered under contract with said Pierre Wibaux by the Green Mountain Ranching Company and the Powder River Cattle Company, all of said cows to be from two years old and up, branded and marked as above mentioned steers,

the total number of said dry cows estimated at about 3000 head, more or less.

" 'For and in consideration of the above sale said party of the second part has purchased and agrees to receive said cattle, and pay therefor as follows:   For the steers as above described at the price of forty-five dollars ($45) per head, and for the dry cows as above described at the price of twenty dollars ($20) per head, the sum of twenty-five thousand dollars ($25,000) to be paid at the execution of this contract, the receipt whereof is hereby acknowledged, and the balance on delivery of said cattle on the cars at Mingusville, on the Northern Pacific railroad, at any time between the 20th day of July and the 10th day of November, 1890.   Party of the second part to receive from party of the first part a clear and good bill of sale of said cattle on the completion of delivery and payment of same.

" 'In witness whereof the parties of this agreement have hereunto set their hands and seals this 21st day of June, A. D. 1890.

PIERRE WIBAUX,   [Seal.]
NELSON MORRIS,   [Seal.]
I. MEYER, *Agent.*   [Seal.]

" 'Witness: DAVID TUCKHORN, WILLIAM COURTENAY.'

"That upon the execution of said contract the appellant paid to appellee twenty-five thousand ($25,000) dollars, as provided in said contract; that the amount of the advance payment was arrived at and paid at the rate of five dollars ($5) a head on the estimated number of steers, 3500, and two dollars and fifty cents ($2.50) a head on the estimated number of cows, 3000, and as the cattle were delivered and paid for, a credit or deduction at those rates was allowed on each head delivered; that at the time of the execution of said contract the cattle referred to therein as being on appellee's range were grazing on appellee's range, which was about seventy-five (75) miles square, and that the appellee did not know at that time,

nor was it then possible to ascertain, the number of cattle answering the description of the contract which were upon the range, nor was it then known what number of cattle would be delivered, answering the description of the contract with appellant, by the Green Mountain Stock Ranching Company and the Powder River Cattle Company under their contracts with appellee; that subsequent to June 21, 1890, and prior to September 5, 1890, and on July 21 to 24, August 16, August 25 and August 28, respectively, appellee delivered to appellant under said contract, and appellant paid for, 1293 steers and 3232 cows, all of which cattle were inspected by the agents of appellant, and received by appellant's agents at Mingusville, Montana, and shipped to Chicago; that on September 5, 6 and 7, 1890, appellee delivered to appellant, and appellant's agents inspected and received, 1072 steers and 370 cows, protesting against their quality, which cattle appellant refused to pay for and has not paid for; that at all times when the cattle were delivered by appellee to appellant at Mingusville, Montana, appellant had an agent or agents at Mingusville for the purpose of inspecting and receiving the cattle under the contract, and there was a fair opportunity for inspection of the cattle at the time they were delivered, but the defects in the cattle, if any, as regards the contract, were not always patent defects; that all the cattle were inspected by appellant's agents before they were received, and there was no fraud on the part of appellee or his agents in reference to the delivery or inspection of said cattle; that on September 9, 1890, appellant refused to, and notified appellee that he would not, receive any more cattle; that there was no substantial breach of the contract between appellant and appellee on the part of the appellee; that on September 9, 1890, appellee had on his range, cattle which answered the provisions of the contract between appellant and appellee to the number of 1072 steers and 1085 cows; that subsequent to Septem-

ber 9, 1890, and prior to November 10, 1890, of the number of cattle remaining on his range, as stated, answering the contract, appellee re-sold 660 steers and 735 cows; that the sales were made at the best market and at reasonable times, and fair market values were obtained for the cattle thus sold; that appellant had due notice that unless he took the cattle the same would be re-sold by appellee and appellant held liable for the loss; that the difference between the contract prices and the prices at which these cattle were re-sold by appellee, figuring on the net prices or proceeds as at Mingusville, Montana, amounted to eighty-one hundred and eighty-two dollars and fifty-five cents, ($8182.55,) which was the amount of the loss suffered by appellee on these cattle re-sold; that appellee had remaining upon his range November 10, 1890, and ready for delivery at Mingusville, 412 steers and 350 cows, which answered and were in accordance with the contract; that the fair market price and value of these cattle at Mingusville on November 10, 1890, was five thousand seven hundred and twenty dollars and thirty-six cents ($5720.36) less than the contract price. But there is no evidence in the record from which it can be determined what the two last named lots of cattle were worth on the 9th day of September, 1890, under the then existing circumstances, nor from which the damages of the appellee on such cattle can be determined, if they are to be fixed as of that date, without reference to anything that might make those damages less or more if fixed as of any other date or dates; that there remained due on September 8, 1890, to appellee from appellant, if all the cattle received were to be paid for according to contract, and taking into consideration the balance of the twenty-five thousand dollars ($25,000) advanced payment remaining in the hands of appellee, the sum of forty-five thousand four hundred and thirty-five dollars ($45,435); that about twelve per cent (12%) of all the cows delivered by the appellee to appellant and received

by appellant, or 472 cows, were noticeably pregnant and hence not dry cows; that such cows were worth twenty-five per cent (25%) less than dry cows, and therefore appellant is entitled to a credit of two thousand three hundred and sixty dollars ($2360) on the cows delivered on this account; that of the total number of steers delivered by appellee and received by appellant 259 steers were not up to contract, and were worth thirty-nine hundred and ninety-two dollars and sixty cents ($3992.60) less than contract prices; that therefore appellant is entitled to a deduction of sixty-three hundred and fifty-two dollars and sixty cents ($6352.60) on account of cattle delivered and received not complying with the contract; that there remained due to appellee from appellant on September 8, 1890, for cattle delivered and received under the written contract, thirty-nine thousand eighty-two dollars and forty cents ($39,082.40); that at the time the contract between appellee and appellant was executed, and up to the present time, there was in force in the State (formerly territory) of Montana the following statute and law:

"'A creditor shall be allowed to collect and receive interest, when there is no agreement as to the rate thereof, at the rate of ten per cent (10%) per annum for all moneys, after they become due, on any bond, bill, promissory note or other instrument of writing; and on any judgment rendered before any court or magistrate authorized to collect the same within the territory, from the day of entering of such judgment until satisfaction of the same be made; likewise on money loaned or money due on a settlement of accounts, from the day of such settlement of accounts between the parties and ascertaining the balance due; on money received to the use of another and retained without the owner's knowledge, and all money withheld by an unreasonable and vexatious delay.'

"That appellee is entitled to recover $39,082.40 for cattle which were delivered to appellant and which com-

plied with the contract; and interest on that sum from September 8, 1890, to date, at ten per cent per annum, as provided by the Montana statute, which interest amounts to $9379.60; and is also entitled to recover for cattle which he had on his range during the time of the contract, which complied with the terms of the contract and which appellant refused to receive, $13,902.91. Total $62,364.91. It is therefore ordered, adjudged and decreed that judgment be entered in this court in favor of appellee and against appellant, and that appellee, Pierre Wibaux, do now have and recover of and from said appellant, Nelson Morris, the sum of sixty-two thousand three hundred sixty-four dollars and ninety-one cents ($62,364.91) so as aforesaid found by the court to be due, together with his costs in this court to be taxed, and costs in the court below in this cause which have been or may be taxed, and that he have execution from this court and recover therefor."

From that judgment this appeal is prosecuted and error assigned.

MORAN, KRAUS & MAYER, for appellant:

Since appellee seeks to recover under the contract for the cattle delivered at the September deliveries, he has the burden of showing that said cattle were of the kind and description called for by the contract. *Norrington* v. *Wright,* 115 U. S. 188; *Ruiz* v. *Norton,* 4 Cal. 355; *Poulton* v. *Lattimore,* 17 E. C. L. 259; *Chanter* v. *Hopkins,* 4 M. & W. 399; *Nichol* v. *Goedts,* 10 Exch. 191; *Bowes* v. *Shand,* 2 App. Cas. 455; *Taylor* v. *Beck,* 13 Ill. 376; *Railway Co.* v. *Northcote,* 15 id. 50; *Baird* v. *Evans,* 20 id. 30; *Doane* v. *Dunham,* 65 id. 512; *Wolf* v. *Dietzsch,* 75 id. 205; *Babcock* v. *Trice,* 18 id. 420; *Eldridge* v. *Rowe,* 2 Gilm. 91; *Shields* v. *Reibe,* 9 Ill. App. 598; *Stein* v. *Metzger,* 18 id. 251; *Iasigi* v. *Rosenstein,* 20 N. Y. 491; *Dwinel* v. *Howard,* 30 Me. 258; *Josling* v. *Kingsford,* 13 C. B. (N. S.) 446; *Catlin* v. *Tobias,* 26 N. Y. 217; *Smith* v. *Brady,* 17 id. 173; *Bank* v. *Mitchell,* 73 id. 406.

If appellee chose to fix his damages by a re-sale of the cattle, it became his duty to effect such re-sale as agent for and on account of appellant, and as soon as appellee reasonably could do so, first giving appellant notice of appellee's intention to effect such re-sale and hold appellant for such sum as the net proceeds of the re-sale should be less than the contract price. *Bell* v. *Offut*, 10 Bush, 632; 2 Benjamin on Sales, (3d ed.) secs. 1058-1060, 1077, note; *Cook* v. *Brandies*, 3 Metc. 555; *Roebling Sons' Manf. Co.* v. *Fence Co.* 130 Ill. 660; *Ullmann* v. *Kent*, 60 id. 271; *Sanborn* v. *Benedict*, 78 id. 309; *Young* v. *Mertens*, 27 Md. 114; *Camp* v. *Hamlin*, 55 Ga. 259; *Pollen* v. *LeRoy*, 30 N. Y. Sup. 549; *Case* v. *Simons*, 7 id. 253; 2 Sutherland on Damages, 359, 360; Chitty on Contracts, (7th ed.) 94; *Hains* v. *Tucker*, 50 N. H. 307; *Redmond* v. *Smock*, 28 Ind. 365.

If the underlying facts are undisputed, the question of reasonable time is a pure question of law. *Railroad Co.* v. *Boyce*, 73 Ill. 510.

The obligation of appellant to receive cattle is limited to the estimates contained in the contract, viz., 3500 steers and 3000 cows; and hence the construction adopted by the court, which made appellant liable in damages for failure to receive 1127 cows, he having already received 3610 cows, was erroneous. *Davis* v. *Barnley*, 2 G. & J. 382; *Doe* v. *Bust*, 1 T. R. 701; *Merriam* v. *United States*, 107 U. S. 437; *Cross* v. *Elgin*, 22 E. C. L. 53; *Tilden* v. *Rosenthal*, 41 Ill. 385.

The contract upon which this action is brought is an entire, inseverable contract, and the trial court having found that a considerable number of the cattle delivered were not in compliance with the terms of the contract, it follows that there can be no recovery under the contract for the cattle delivered, and that the failure on the part of appellee to deliver such cattle as are called for by the contract justified appellant in refusing further cattle. *Shinn* v. *Bodine*, 60 Pa. St. 182; *Whitcher* v. *Hall*, 5 B. & C. 269; *Thompson* v. *Conover*, 30 N. J. L. 329, and 32 id. 466; *King Philip's Mills* v. *Slater & Sons*, 12 R. I. 82; *Cox* v. *Rail-*

*road Co.* 44 Cal. 18; *Leopold* v. *Salkey,* 89 Ill. 42; *Richards* v. *Shaw,* 67 id. 222; *Taylor* v. *Renn,* 79 id. 181; *Doane* v. *Dunham,* 65 id. 512; *Bassett* v. *Child,* 11 id. 569; *Railroad Co.* v. *Smith,* 71 id. 496; *Graham* v. *Walker,* 44 id. 385; *Bradley* v. *King,* 44 id. 339; *Thrift* v. *Payne,* 71 id. 408; *Taylor* v. *Beck,* 13 id. 376; *Eldridge* v. *Rowe,* 2 Gilm. 91; *Mondel* v. *Steel,* 8 M. & W. 858; *Reed* v. *Phillips,* 4 Scam. 49; *Shields* v. *Reibe,* 9 Ill. App. 598; *Stein* v. *Metzger,* 18 id. 251; *Dwyer* v. *Duquid,* 70 Ill. 307; *Norrington* v. *Wright,* 115 U. S. 188; *Catlin* v. *Tobias,* 26 N. Y. 217; 2 Sutherland on Damages, 408; *Andrews* v. *Eastman,* 41 Vt. 134; *Dwinel* v. *Howard,* 30 Me. 258; *Reybold* v. *Voorhees,* 30 Pa. St. 116.

The case presented by appellee is not within the interest laws of the State of Montana.     *Titley* v. *Stone Co.* 127 Ill. 457; *Pekin* v. *Reynolds,* 31 id. 529; *Randall* v. *Greenhood,* 3 Mont. 506; *Isaac* v. *McAndrew,* 1 id. 437; *Palmer* v. *Murray,* 8 id. 312; 1 Sutherland on Damages, 610; *"The Isaac Newton,"* 1 Abb. Admr. Rep. 588; *Shipman* v. *State,* 44 Wis. 458.

Where interest is claimed and allowed, not by the terms of the contract, but as damages, it must be claimed and allowed according to the *lex fori.*     Wharton on Conflict of Laws, sec. 511; *Goddard* v. *Foster,* 17 Wall. 123; *Ayer* v. *Tilden,* 15 Gray, (Mass.) 178; *Sherman* v. *Gassett,* 4 Gilm. 521; *Clark* v. *Child,* 136 Mass. 344; *Hopkins* v. *Shepard,* 129 id. 600.

The Appellate Court erred in incorporating in the record in this case a finding of facts.     Starr & Curtis, sec. 88, chap. 110; *Gammon* v. *Huse,* 100 Ill. 234; *Goodrich* v. *Lincoln,* 93 id. 259; *Gas Illuminating Co.* v. *Francis,* 27 Ill. App. 303; *Harris* v. *Thomas,* 37 id. 517; *Insurance Co.* v. *Scammon,* 123 Ill. 601.

FLOWER, SMITH & MUSGRAVE, for appellee:

The written contract between plaintiff and defendant did not contain an express warranty as to the quality of the cattle.     *Towell* v. *Gatewood,* 2 Scam. 22; *Ender* v. *Scott,* 11 Ill. 35; *Adams* v. *Johnson,* 15 id. 345; *Wheeler* v. *Reed,* 36

id. 81; *Foos* v. *Sabin,* 84 id. 564; Wharton on Contracts, secs. 227, 560.

A warranty does not extend to known defects. *Kenner* v. *Harding,* 85 Ill. 264; *Bennett* v. *Buchan,* 76 N. Y. 386.

Where goods are sold by description, or with a warranty not intended to survive acceptance, if the buyer inspects the goods at the time of delivery and then receives and converts them, he is estopped from thereafter claiming damages for defects in the goods which were then observable. Pollock on Contracts, 528; *Dutchess Co.* v. *Harding,* 49 N. Y. 321; Wharton on Contracts, sec. 562; *Reed* v. *Randall,* 29 N. Y. 358; *McCormick* v. *Dawkins,* 45 id. 265; *Gaylord Manf. Co.* v. *Allen,* 53 id. 515; *Gurney* v. *Railroad Co.* 58 id. 358; *Norton* v. *Dreyfuss,* 106 id. 90; *Brown* v. *Foster,* 108 id. 387; *Studer* v. *Bleistein,* 115 id. 316; *Thompson* v. *Libby,* 35 Minn. 443; *McCormick* v. *Kelly,* 28 id. 135; *Fitch* v. *Carpenter,* 43 Barb. 40; *Olson* v. *Mayer,* 46 Wis. 551; *Locke* v. *Williamson,* 40 id. 377; *Eureka Steel Co.* v. *Morden Frog Works,* 23 Ill. App. 591; *Titley* v. *Stone Co.* 127 Ill. 457; *Underwood* v. *Wolf,* 131 id. 425; 31 Ill. App. 637; *Maxwell* v. *Lee,* 34 Minn. 511; *Haase* v. *Nonnemacher,* 21 id. 486; *Parks* v. *O'Connor,* 70 Tex. 377; *Nye* v. *Alcohol Works,* 51 Iowa, 129.

This is so, even though the buyer complains and protests at the time, unless a new contract be made. *Parks* v. *O'Connor,* 70 Tex. 377; *Thompson* v. *Libby,* 35 Minn. 443; *Olson* v. *Mayer,* 46 Wis. 377.

The plaintiff was entitled to interest at ten per cent on amount due for cattle delivered under the written contract. Stat. of Montana, sec. 1237; Starr & Curtis, chap. 74, sec. 2; *Randall* v. *Insurance Co.* 10 Mont. 340; *Whittaker* v. *Crow,* 132 Ill. 627; *Heiman* v. *Schroeder,* 74 id. 158; *Dobbins* v. *Higgins,* 78 id. 440; *Heissler* v. *Stose,* 131 id. 393; *Downey* v. *O'Donnell,* 92 id. 559.

The burden of proof to show breach of warranty, and damages resulting, was on the defendant. Best on Evidence, (Morgan's ed.) sec. 268; *Maltman* v. *Williamson,* 69 Ill. 423; *Insurance Co.* v. *Morgan,* 22 Ill. App. 198; 2 Benja-

min on Sales, (4th Am. ed.) sec. 929; *Amos* v. *Hughes,* 1 M. & Rob. 464; *Coal Co.* v. *Bradley,* 2 Wash. 600; *Manufacturing Co.* v. *Wood,* 84 Mich. 452; *Mixer* v. *Coburn,* 11 Metc. 559.

If the buyer of personal property wrongfully refuses to take the goods, the seller may make a re-sale without notice to the buyer, and hold him for the loss sustained. *Ullmann* v. *Kent,* 60 Ill. 271; *Maulding* v. *Steele,* 105 id. 644; *Plumb* v. *Campbell,* 129 id. 101; *Waples* v. *Overaker,* 77 Tex. 7; *West* v. *Cunningham,* 9 Port. 104; *Atwood* v. *Lucas,* 53 Me. 508; *Gaskell* v. *Morris,* 7 W. & S. 32.

The provision of the contract that defendant was to take *all* the cattle on the range of certain descriptions, was not limited by the words, "estimated at 3500 steers and 3000 cows, more or less." The plaintiff, if he acted in good faith in making the estimate, was entitled to deliver *all* that were on the range. *Tancred* v. *Steel Co.* 15 App. Cases, 125; *Brawley* v. *United States,* 96 U. S. 168; *Day* v. *Cross,* 59 Tex. 595; *McLay* v. *Perry,* 44 L. T. (N. S.) 152; *Robinson* v. *Noble,* 8 Pet. 195; *Ashcom* v. *Smith,* 2 Pen. & W. 211; *Iron Co.* v. *Parsons,* 5 Gray, 589; *Noble* v. *Googins,* 99 Mass. 231.

Even if some of the cattle delivered by plaintiff and received by defendant did not comply with the contract, yet the plaintiff was entitled to the contract price for those that did. 2 Sutherland on Damages, 356; *Holmes* v. *Stummel,* 24 Ill. 370; *Brigham* v. *Hawley,* 17 id. 38; *Folliott* v. *Hunt,* 21 id. 654; *Cochran* v. *Chitwood,* 59 id. 53; *Richards* v. *Shaw,* 67 id. 222; *Dobbins* v. *Higgins,* 78 id. 440; *Chicago* v. *Sexton,* 115 id. 230; *Defenbaugh* v. *Weaver,* 87 id. 132; *Evans* v. *Railroad Co.* 26 id. 189; *Underwood* v. *Wolf,* 131 id. 425.

That some of the cattle inspected and accepted by defendant did not come up to contract did not justify the defendant in refusing further cattle that did comply with the contract. *Cahen* v. *Platt,* 69 N. Y. 348; *Scott* v. *Coal Co.* 89 Pa. 231; *Lyon* v. *Bertram,* 20 How. 149; *Miller* v. *Moore,* 83 Ga. 684; *Guernsey* v. *Lumber Co.* 87 Cal. 249; *Blackburn* v. *Riley,* 47 N. J. L. 290; *McFadden* v. *Wetherbee,* 63 Mich. 390.

Mr. Justice Phillips delivered the opinion of the court:

It is first urged by appellant, that as appellee seeks to recover, under the contract, for September deliveries, the burden is upon him to show the cattle so delivered were of the kind and description called for by the contract. The written instrument constituted the contract between the parties, and from it the undertaking of the parties is to be determined. Whether a warranty is embraced in a written contract is a question of law for the consideration of the court, and it is a question of fact for the jury, when the contract is parol, whether the expressions are sufficiently definite to support the implication of a warranty. In sales by description, under a written contract, there is a warranty that the goods, when delivered, will correspond in quality and kind, as the description represents them to be. The property sold and to be delivered to appellant was described in the contract as steers of certain ages, with designated brands, from certain ranches, and cows, with certain brands and designated age, from same ranches. That was identity of the property sold. It was further stipulated, as to quality, that the steers were to be good merchantable cattle, with no stags, cripples or big jaws among them, and the cows were to be dry cows. Identical property, possessing certain qualities, was sold at a stated price. The appellee warranted the cattle so sold, when delivered, should correspond in identity, quality and description with the property in the contract described. When he delivered cattle in pursuance of that contract and sought to recover the contract price, whether he declared specially on the contract or generally in *indebitatus assumpsit*, which he may do at his election, if it appears the contract was fully performed on the part of appellee and nothing remained to be done under it but for the appellant to pay the money due, there would be a right of recovery. Whether the contract has been com-

plied with on the part of the appellee is to be determined from the evidence, and if, on trial, it appears he has not fully executed his contract, where not prevented by the appellant, he would have no right to recover, regardless of his manner of declaring, either specially or by the common counts. (*Throop* v. *Sherwood*, 4 Gilm. 92; *Peake* v. *Wabash Railroad Co.* 18 Ill. 88; *Lane* v. *Adams*, 19 id. 167; *Tunnison* v. *Field*, 21 id. 107; *Thomas* v. *Caldwell*, 50 id. 138; *Holmes* v. *Stummel*, 24 id. 370; *Walker* v. *Brown*, 28 id. 378; *Brand* v. *Henderson*, 107 id. 141; *Phelps* v. *Hubbard*, 59 id. 79.) The burden of proof would be on the appellee to show a compliance with the contract on his part. (*Brand* v. *Henderson, supra; Walker* v. *Brown, supra; Holmes* v. *Stummel, supra; Phelps* v. *Hubbard, supra.*) And it was incumbent upon him to show that he delivered property of the character and description demanded by the terms of the contract, the subject matter of the sale being steers three years old and up, bearing certain brands, on certain ranges, etc., and cows two years old and up, bearing certain brands, on certain ranges, etc., at an agreed price. The appellee had the *onus* of proving that he had complied with the terms of the contract in delivering the identical thing sold, and this regardless of the appellant's pleas. If appellee delivered cattle of that identical character, then, if appellant set up in his pleas that the cows were not dry or the steers were not good merchantable steers, he would assume the burden of proving his pleas, as the warranty in that respect was collateral to the identical thing sold. In the first place, the identity of the cattle sold is the subject matter of the performance of the contract by the appellee, and if he fails to deliver the thing sold he has failed to perform his contract. In the second place, where the appellee delivers the identical thing sold and has performed his contract in that behalf, if the appellant alleges that it fails to possess the attributes it was warranted to possess, he may so plead, and on that issue the burden would rest on him, the appellant. In the

latter case the contract of sale as to the warranty of
identity has been complied with, but there is a breach of
warranty as to qualities the article was warranted to
possess.

The trial court refused to hold the 29th proposition
presented by appellant, that "where goods are sold by a
particular description, the vendor, in an action to recover
the price therefor, has the burden of proving that the
goods delivered were of the description called for by the
contract." This proposition stated a correct rule of law
and should have been held as asked. The special finding
of facts by the Appellate Court on the question of appel-
lee's compliance with his contract in reference to the
September deliveries of cattle is as follows: "That on
September 5, 6 and 7, 1890, appellee delivered to appel-
lant, and appellant's agents inspected and received, 1072
steers and 370 cows, protesting against their quality,
which cattle appellant refused to pay for and has not
paid for; that at all times when the cattle were delivered
by appellee to appellant at Mingusville, Montana, ap-
pellant had an agent or agents at Mingusville for the
purpose of inspecting and receiving the cattle under the
contract, and there was a fair opportunity for inspection
of the cattle at the time they were delivered, but the
defects in the cattle, if any, as regards the contract, were
not always patent defects; that all the cattle were in-
spected by the appellant's agents before they were deliv-
ered, and there was no fraud on the part of appellee or
his agents in respect to the delivery or inspection of said
cattle; that on September 9, 1890, appellant refused to,
and notified appellee that he would not, receive any more
cattle; *that there was no substantial breach of the contract
between appellant and appellee on the part of the appellee,*" etc.
This finding of fact is conclusive on this court by the
provisions of the statute, and whether the proof was
made by appellant or appellee, regardless of the ques-
tion as to who had the burden of proof, the fact remains

proven that there was no substantial breach of the con-
tract on the part of the appellee,—in other words, the
fact is found, from the evidence, that the appellee sub-
stantially complied with the contract. Where there is a
sale and delivery by an executory contract with express
warranty, and the property turns out to be defective,
the purchaser may receive, retain and use, and become
vested with the title to, the property without waiving
his warranty and a right to sue thereon, or set it up as
a defense on a suit for the purchase price, is the rule in
this State. (*Underwood* v. *Wolf*, 131 Ill. 425, and authori-
ties cited.) The finding that the cattle were received
and retained, etc., would not waive the right of appellant
to set up the defense of his warranty as to quality or
identity, and whilst the contract of appellee required
him to furnish identical cattle he contracted to sell, and
the burden would be on him to show that fact, still the
finding, from the evidence, that he had substantially com-
plied with his contract renders the error of the trial court
in refusing to hold the 29th proposition, harmless.

Appellant insists that under the contract, as construed
in the light of the evidence as to how the amount of the
advance payment was determined and in the light of the
acts and conduct of the parties, the obligation of appel-
lant to receive cattle is limited to the estimates contained
in the contract, viz., 3500 steers and 3000 cows; and hence
the construction adopted by the court, which made appel-
lant liable in damages for failure to receive 1127 cows, he
having already received 3610 cows, was erroneous. By
the terms of the contract the appellee sold, and appel-
lant agreed to receive, all of appellee's steers three years
old and up on his ranch between the Little Missouri and
Yellowstone rivers, estimated at about 3500, branded,
etc.; also all steers from three years old and up, branded,
etc., to be delivered by the Green Mountain Stock Ranch-
ing Company under their contract with Wibaux; also all
the four year old steers and up, known as 76 brand, to

be delivered by the Powder River Cattle Company under their contract with appellee; also all dry cows two years old and up on appellee's range, and all dry cows of that description to be delivered to appellee under the two contracts mentioned. The number of dry cows was estimated at 3000, more or less. The sum of $25,000 was to be paid on the execution of the contract. The construction of the written contract being a question of law, from that instrument it appears that the number of steers contracted to be sold and received from appellee's range was estimated at 3500, more or less; but in addition thereto appellee contracted to sell, and appellant to receive, all steers of designated description and quality acquired by appellee under his two contracts. It also appears that all dry cows of designated ages on appellee's range, or acquired by him under his two contracts, he contracted to sell and appellant to purchase and receive. The estimate of the number of the steers and cows is not to be construed as a contract limited to that number, as that estimate, applied to the steers, only had reference to those on one range, and the contract included all others of designated description and quality to be received under two contracts, which necessarily excludes the idea that the number of steers sold and purchased was limited to 3500; and the language used cannot be held to fix the number of cows sold and purchased to be fixed at 3000, as the language is "all cows," etc. No matter how the sum of $25,000 cash payment was apportioned, its apportionment cannot control the express language used in the contract and about which there is no ambiguity. This latter contention of appellant can not be held in the construction of the contract.

It is next urged by appellant, that if he be liable to appellee in damages by reason of his refusal to receive further cattle, such damage should be estimated with reference to the market price at the time or times when the evidence shows the appellee had, or by the exercise of

reasonable diligence might have had, the cattle rounded up at Mingusville ready for shipment; and further, if appellee sought to fix damage by a re-sale of cattle, it became his duty to do so, as agent for and on account of appellant, as soon as the same could be done, first giving notice to appellant of such purpose and of an intention to hold appellant for the difference. As we have held, under the second point made by appellant, that the contract did not, by numbers, fix the number of cattle to be bought, if appellant refused to accept any more cattle under the contract, at the contract price, which the appellee was ready to deliver in accordance with the contract, in quality and description and within the time limited, then appellant would be liable for a breach of his contract. On this question the Appellate Court determined the facts, and found that on September 9, 1890, appellee had on his range cattle which fulfilled the requirements of the contract, and appellant had notice that unless he took the cattle they would be re-sold and he held liable for loss. By the provisions of the contract the cattle were to be delivered at any time between the 20th of July and the 10th of November, 1890. There was no limitation as to time further than that, and appellee was not compelled or required, by his contract, to deliver or sell, on breach of contract by appellant in refusing to receive any more cattle, at any particular time except between those dates. The finding by the Appellate Court that re-sales were made at reasonable times and at fair market values determines those questions as questions of fact.

The appellant claims that whether such re-sales were within a reasonable time is a question of law for the court, and that this court is not concluded by the finding of the Appellate Court as a question of fact. The rule is, where facts are undisputed or admitted what is reasonable time is a question of law, but where what is reasonable time depends upon controverted points, or where

the motives of the parties enter into the question, the whole is necessarily submitted to the jury to be determined, from the facts, whether the time was or was not reasonable. (*Hill* v. *Hobart*, 16 Me. 168.) The law can not prescribe, in general, what shall be reasonable time except on certain and determined facts, because the question must depend upon the situation of the parties and the circumstances peculiar to each case. Where the law itself prescribes what shall be reasonable time in respect to a given subject, the question is one of law, and the jury is confined to finding the facts as to the subject. Whenever the special facts and circumstances are such that the court cannot, by the aid of any legal rule or principle, decide upon the legal quality of the facts, the jury must draw the inference with reference to the ordinary course and practice of dealing under the circumstances of the particular case. *Toledo, Peoria and Warsaw Railway Co.* v. *Parker*, 49 Ill. 385; *Town of Fox* v. *Town of Kendall*, 97 id. 72; *Luckhart* v. *Ogden*, 30 Cal. 547; *Henkle* v. *Smith*, 21 Ill. 237; *Cocker* v. *Franklin Hemp and Flax Manf. Co.* 3 Sumn. 532.

The question as to reasonable time being one of fact, ordinarily the time is reasonable or unreasonable, in point of law, according to the finding of the jury in point of fact. In this case the question as to whether such re-sales were made within a reasonable time is one of fact, and the finding by the Appellate Court is conclusive. It is not required that the re-sale shall be made by the vendor as the agent of the vendee. "Where a vendee of goods sold at a special price refuses to take and pay for the goods, the vendor can re-sell the goods and charge the vendee with the difference between the contract price and that realized at the sale. The sale must be fair, and must be made in good faith, and in the mode best calculated to produce the real value of the goods." (*Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 Ill. 660; *Ullmann* v. *Kent*, 60 id. 271; *Sanborn* v. *Benedict*, 78 id. 309.) Nor is notice of re-sale

required in every case. (*Ullmann* v. *Kent, supra.*)  In this case the appellee was ready, willing and able to comply with his contract.  He gave notice to the appellant that unless he took the cattle they would be re-sold and he held liable for the loss, and a re-sale was made at reasonable times and the best and fair market values obtained for cattle thus re-sold.  The position of appellant on these propositions is not well taken.

Appellant next insists that the contract upon which this action is brought is an entire, unseverable contract, and the trial court having found that a considerable number of the cattle delivered were not in compliance with the terms of the contract, there can be no recovery thereunder for the cattle delivered, and the failure on the part of appellee to deliver such cattle as were called for by the contract justified appellant in refusing further cattle.  It appears that all cattle shipped prior to the September deliveries had been received and paid for as delivered, at the rate per head fixed by the contract, and those so delivered were accepted as being in compliance with the contract, and were satisfactory to appellant. The intention of the parties, as expressed in the contract, is of controlling importance, and their own construction may become of interest.  Contracts should receive a reasonable interpretation and be given effect according to their reasonable intendments.  The contract was for the sale of a large number of cattle, of certain description and quality, on a range about seventy-five miles square, where other cattle of different qualities and descriptions were herded and with which they were commingled.  In rounding up, lotting and loading for shipment it could not have been a contemplation of the parties that if cattle of a less age or not possessing the requisite quality of those contracted to be delivered should be shipped with others that were of a quality and description that made them fulfill the requirements of the contract, the inclusion of the cattle not in compliance with the con-

tract should defeat the right of recovery for those that were in compliance therewith. The reasonable interpretation of this instrument is, that where deliveries of cattle were made as therein contracted to be sold and received, they were to be paid for at the rate per head fixed by the contract, as fast as delivery was made. This was the construction put upon the contract by the parties thereto as to all shipments made prior to the September deliveries. For those shipped and delivered which were not in accordance with the contract the price fixed by the contract was not recoverable. But finding a substantial performance of the contract by the plaintiff, as has been done by the Appellate Court, the further finding is made that certain cows were not dry cows and that certain steers were not up to the contract, and a value is found on such cows and steers at a less amount than the contract price. Under this contract a recovery may be had for the cattle delivered. The shipping of certain cattle that did not fulfill the requirements of the contract with others that did, did not justify appellant in refusing further cattle that were of the description and quality mentioned in the contract. The entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject matter. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown. Nor will the mode of measuring the price, as by the bushel, ton or pound, change the effect of the agreement when it is entire. (*Shinn* v. *Bodine*, 60 Pa. St. 182.) A contract for property to be delivered in installments, where each installment is to be paid for separately, is not an entire contract. (2 Sutherland on Damages, p. 356.) As we have construed this contract it must be held a severable contract to the extent that each delivery of cattle in the contract mentioned was to be paid for as delivered, and is entire to the extent that the appellant's duty was to

receive all of those deliveries contemplated by the con-
tract at the contract price.

Appellant next denies that the case presented is within
the interest laws of the State of Montana, and maintains
that where interest is claimed and allowed, not by the
terms of the contract, but as damages, it must be claimed
and allowed according to the *lex fori.* The appellee filed
a special count claiming a right to recover from appel-
lant interest under the Montana statute, which was
pleaded on the value of the September deliveries of cat-
tle. The evidence shows the contract was made and was
to be performed in Montana. Cattle were there deliv-
ered which were in accordance with the contract, and
were received and not paid for. It was only as to these
that the claim for interest was made. The statute is not
only pleaded but proven. By referring to the statute of
Montana in evidence, we find it declared: "A creditor
shall be allowed to collect and receive interest, when
there is no agreement as to the rate thereof, at the rate
of ten per cent (10%) per annum for all moneys, after
they become due, on any bond, bill, promissory note or
other instrument of writing; and on any judgment ren-
dered before any court or magistrate authorized to collect
the same within the territory, from the day of entering
of such judgment until satisfaction of the same be made;
likewise on money loaned or money due on a settlement
of accounts, from the day of such settlement of accounts
between the parties and ascertaining the balance due;
on moneys received to the use of another and retained
without the owner's knowledge, and all money withheld
by an unreasonable and vexatious delay."

The question of a recovery for interest on a contract
which was silent as to place of payment and rate of in-
terest was before the Supreme Court of Montana at the
January term, 1872, in a case where the defendant was a
resident of the State of New York, and it was said: "It
was necessary to aver a demand of payment, and if the

defendants were then residing in New York City, or had their domicil there, it was necessary to prove demand at that place. And it would seem to result from the authorities, that if payment was delayed or refused after demand made, the party may collect interest according to the rate of interest in the country where the contract is performed, if by the nature of the contract interest is recoverable by the laws of that country." (*Isaac* v. *McAndrew*, 1 Mont. 437.) *Randall* v. *Greenhood*, 3 Mont. 506, was a case where Black & Daniels sold their stock of goods, with other property, to Randall, and delivered possession to him. Greenhood and others were creditors of Black & Daniels at the time of the sale, and a short time after that sale attached the goods so sold to Randall, alleging the sale was fraudulent and made to hinder and delay creditors. The attaching creditors obtained possession of the goods and converted the same, etc. Randall instituted suit to recover the value thereof. He had a verdict for the value of the goods, with interest, etc. It was said: "The claims and demands upon which interest is allowed depend entirely upon the statute. This claim or demand of respondent against appellants is not of the kind upon which interest can be allowed until after judgment." The case of *Palmer* v. *Murray*, 8 Mont. 312, was for the wrongful conversion of the property, and the court held interest could not be recovered for the value thereof, and it was therein said: "I take it to be the rule, in the absence of any agreement, that interest *eo nomine* will not be allowed except when the statute permits. This construction of the statute is under the well known rule of interpretation found in the maxim of *expressio unius et exclusio alterius*. Having specified the cases in which interest shall antedate the judgment, the natural conclusion is that the law-maker intended to exclude or deny the right in instances not so enumerated." In *Madox* v. *Rader*, 9 Mont. 125, it was held in an action on an official bond, where a demand had been

.made for money due and payment refused, that the sureties are liable for legal interest from the date of such demand, although the principal, with such interest added, exceeded the penalty of the bond,—following *Jefferson County* v. *Lunberger*, 3 Mont. 231. In *Randall* v. *Fire Ins. Co.* 10 Mont. 340, interest upon the amount found due, after the expiration of sixty days from proofs of loss, was held properly found, where, by the terms of the policy, the loss was payable sixty days after proof of loss.

From these authorities, as well as from a construction of the statute, we hold that the case here presented is within the interest statute of Montana, pleaded and proven as it is here.

It was held in *Chumasero* v. *Gilbert*, 24 Ill. 651, "that the *lex fori* must govern the rate of interest recoverable on a contract which contains no agreement for a different amount, or, if the contract was entered into in a State where the law has fixed a greater rate than is allowed by our statute, that fact must be averred and proved to authorize a recovery of such rate." To the same effect is *Chumasero* v. *Gilbert*, 24 Ill. 293, *Hall* v. *Kimball*, 58 id. 58, and *Deem* v. *Crume*, 46 id. 69. The rule is, with reference to the recovery of interest on a contract made in another country and payable therein, that where the contract is silent as to the rate of interest the *lex fori* will determine the rate to be allowed, if any, in the absence of the law of the place of contract and payment being pleaded and proven. Where the rate of interest sought to be recovered is greater than that provided by statute where the remedy is sought to be enforced, and the law of the place of payment is pleaded and proved allowing a greater interest than that where the remedy is sought, then the *lex loci* may be invoked to show the contract is legal, and the true interpretation of the parties framing it. (*Sherman* v. *Gassett*, 4 Gilm. 521.) The contract, as thus construed in the light of the statute of Montana, authorized a recovery of interest. The statute of this State allow-

ing interest, similar in its language to that in Montana under consideration, has in many cases been construed to allow interest on contracts similar to this. We cite *Heiman* v. *Schroeder*, 74 Ill. 158; *Downey* v. *O'Donnell*, 92 id. 559; *Whittaker* v. *Crow, Hargadine & Co.* 132 id. 627; *A. O. U. W.* v. *Zuhlke,* 129 id. 298; *Heissler* v. *Stose*, 131 id. 393. We find no error in the Appellate Court allowing interest on this contract, under the pleadings and evidence appearing in this record.

Appellant now contends the Appellate Court erred in incorporating in the record in this case a finding of facts, because it did not reach a different conclusion on the finding of facts, but on the law alone, and therefore section 88 of the Practice act does not authorize such finding to be incorporated into the record. The statute does not authorize the Appellate Court to incorporate into the record any special finding of facts, except in cases where the same is different, in part, at least, from the finding in the trial court. (*Gammon* v. *Huse*, 100 Ill. 234.) In *Commercial Ins. Co.* v. *Scammon*, 123 Ill. 601, it was said (p. 606): "But the question still remains, does the recital of facts in this record conform to the statute? It is obvious that the facts recited should include the facts concerning every material issue submitted to the trial court, otherwise a judgment might be rendered for the plaintiff by the Appellate Court on one issue, while on an issue not considered by that court the trial court decided, and properly so, in favor of the defendant. We may look to the record to see what were the issues in the case and whether there was any evidence tending to prove them." There may be a different finding of facts by the Appellate Court from the trial court without its being an absolute reversal. On examination of this record it appears the findings of the Appellate Court embrace every material issue in the case. It further appears that the findings of the Superior Court were:

| | | |
|---|---|---:|
| Value of September deliveries............................ | | $45,435 00 |
| For loss on cattle shipped and sold after Sept. deliveries.. | | 9,532 75 |
| For loss of cattle on hand.............................. | | 5,801 66 |
| | | $60,769 41 |
| Less amount to be credited for steers not up to contract............................. | $3,812 11 | |
| Less amount to be credited for pregnant cows | 2,441 30 | |
| | | 6,253 41 |
| Balance........................................ | | $54,516 00 |

And judgment was entered by the trial court for $54,515.90. The Appellate Court found:

| | | |
|---|---|---:|
| Value of September deliveries........................... | | $45,435 00 |
| Less credit for pregnant cows ............... | $2,360 00 | |
| Less also for steers not up to contract........ | 3,992 60 | |
| Total credit............. .............. | | 6,352 60 |
| Balance........................................ | | $39,082 40 |
| Interest on that sum from September 8, 1890............ | | 9,379 60 |
| Loss on cattle re-sold after September deliveries........ | | 8,182 55 |
| Loss on cattle on hand November 10.................... | | 5,720 36 |
| Total ........................................... | | $62,364 91 |

For which amount the Appellate Court entered judgment on its findings. The loss on cattle re-sold after September deliveries, loss on cattle on hand November 10, the amount to be credited for pregnant cows, the amount to be credited for steers not up to contract, are all questions of fact found by the Appellate Court different from what they were found by the trial court. The Appellate Court allowed interest which was not allowed by the trial court. The facts, in part, were found different by the Appellate Court from what they were found by the trial court, and the Appellate Court found on all the material issues in the case. We are therefore bound by that finding.

We find no reversible error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*