## The Gunning System v. Charles LaPointe.

### Gen. No. 11,235.

1. JUDICIAL NOTICE—*what, not taken of.* Judicial notice will not be taken of the laws of a sister state, and when it is contended that the laws of such state differ from the laws of this state, such difference must be proven as a matter of fact.

2. SISTER STATE—*presumption as to law of.* In the absence of proof it will be presumed that the law of a sister state is the same as the law of this state.

3. SISTER STATE—*how law of, must be shown in bill of exceptions.* Where it has been sought in the trial court to prove the law of a sister state by the introduction of portions of the reports of the decisions of the courts of that state, the opinions relied upon, or excerpts therefrom, must be set forth *in haec verba* in the bill of exceptions, in order that such proof may be before an appellate tribunal for review.

4. SERVANT—*when, may rely upon promise to repair.* It is not essential that the servant injured should have personally complained of his place of work; a complaint by whomsoever made is sufficient, and a promise made in the presence and hearing of such servant will inure to his benefit and he may rely thereon.

5. ASSUMED RISK—*when question of, is waived, as one of law.* Where this question has by motion for a peremptory instruction been raised as one of law, it cannot be argued as one of law where subsequently to the overruling of such motion the party who made the same has caused such question of assumed risk to be submitted to the jury as one of fact.

6. CORPORATIONS—*when, liable for act of agent.* Where two corporations are in law partners for the erection and maintenance of billboards, the act of the agent of one of such corporations is in law the act of each of such corporations.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed March 31, 1904. Rehearing denied April 18, 1904.

F. J. CANTY and C. H. VANALSTINE for appellant; J. C. M. CLOW, of counsel.

GEMMILL & FOELL for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellee sued appellant in case for negligence *per quod*

appellee was injured. The jury found for appellee and assessed his damages at the sum of $13,250, from which $3,250 was remitted, and judgment was rendered for $10,000. The accident which occasioned appellee's injuries occurred February 23, 1901, at about 4:30 o'clock in the afternoon. The appellant was engaged in the business of advertising in Chicago, Illinois, and Milwaukee, Wisconsin, by means of painting signs on bulletin boards. Mr. R. G. Gunning, appellant's manager, testified that a billboard is posted on, and a bulletin board is painted on. The board which was being used at the time of the accident hereinafter mentioned, was a bulletin board, although frequently referred to by witnesses as a billboard. Appellee's business was that of a sign painter's helper. He commenced working for appellant in Chicago in the year 1898, and worked for it from that time till February 23, 1901, the date of the accident. For about nine or ten months before the accident appellee had done painting for appellant outside its shop in Chicago, working as a helper. Prior to said time he had worked in the shop, in Chicago.

Otto Reich, appellant's treasurer, and who had charge of sending appellant's employes to work out of Chicago, no other person having such authority except Mr. Gunning, who, as Reich testified, never attended to that part of the business, sent appellee to Milwaukee, giving him a mileage book, and telling him to report to Mr. Fromm, who would give him all instructions. Fromm was appellee's foreman, and testified that he directed appellee what to do, by authority from appellant's office. Fromm and appellee went to Milwaukee, and, by Reich's directions, as Fromm testified, reported to Frank Fitzgerald, and Fitzgerald directed as to what board they should paint, what should be painted on it, and where it was. On Tuesday, February 18, 1901, in the afternoon, appellee and Fromm went to the board in question, and appellee, in attempting to swing up a scaffold on which to stand to paint, discovered that the board was shaky, and that there was no band on top of it, and told Fromm about this, when Fromm said they would finish

coating the space on which they were working, and then
report to Fitzgerald, and, after they quit work that even-
ing, they so did.   Fromm's testimony as to what occurred
between him and Fitzgerald is, substantially, that he saw
Fitzgerald Tuesday evening and told him the board was not
safe, that it was not properly put up, and that it should be
repaired, and that Fitzgerald gave him a short answer, and
told him to come around in the morning; that the next
morning about eight o'clock he and appellee went to Fitz-
gerald's office, and he told Fitzgerald that the board was
shaky and that something must be done to it, if he wanted
them to work on it, and Fitzgerald said that he, Fromm,
was always kicking about the boards not being right, when
witness said that he had to work on the boards, and, if any-
thing happened, he would be hurt and not Fitzgerald; and
that he also told Fitzgerald that there was no piece on the
front of the board, no moulding around the front of it, and
no band on it, and Fitzgerald said that if that was all that
was wanted he would have the band put on, and told him
to go to work, which he did.   Fromm further testified that
appellee, while the conversation with Fitzgerald occurred,
was standing there listening to it, but took no part in it;
that he had no right to interfere.   Appellee's testimony as
to what occurred in Fitzgerald's office on Wednesday morn-
ing is, in substance, the same as Fromm's.   Appellee testi-
fied that Fromm told Fitzgerald that the board was not
properly braced, and that there was no band along on the
top of it, to protect the hooks, and that Fitzgerald said to
Fromm that he was always kicking, and that he had better
go back to work, when Fromm said he would not until
Fitzgerald fixed the sign, and that Fitzgerald then said, if
that was all he wanted, for him to go back to work and he
would have the band put on.   The bulletin board was con-
structed along two sides of a building on the northwest cor-
ner of Milwaukee and Wisconsin streets, in Milwaukee, and
was a total length of about 260 feet, 130 feet of it fronting
on each of said streets.   It was constructed of tongued and
grooved boards an inch thick and four or five inches wide,

nailed to two cross-pieces one by three inches, the cross-
pieces being each about two and one-half feet from the ends
of the boards.    There was no cross-piece in front, and no
slip or band along the top ends of the tongued and grooved
boards.    When the board was in position it was braced in
the rear next to the building, and its plain surface fronted
the street and its top was about twenty-three and its bot-
tom fifteen feet from the ground.    The scaffold on which
the men worked while painting consisted of  a ladder
twenty-two feet long by eighteen to twenty-four inches
wide, along the rungs or steps of which a board was laid;
ropes were attached to this ladder at each end, which
passed through pulleys in blocks, and the upper block,
when the scaffold was swung, was attached to an iron hook,
which hook was placed over the top end of the board.
One end of each of the ropes which passed through the
upper pulleys hung down, and when fastened kept the scaf-
fold in position.    The ropes could also be used to raise or
lower the scaffold by means of the pulleys.    A bumper was
used to keep the scaffold about eighteen inches from the
front of the bulletin board.    The hooks used are' described
in appellant's argument as being S shaped, about a foot and
a half in length, half an inch thick and seven inches across
from one of the points or ends to the nearest part of the
body.    Fromm left appellee at work about two o'clock Sat-
urday afternoon and went to Chicago, so that appellee was
alone at the time of the accident.    Fitzgerald had not
caused a band to be placed on the board.    Appellee thus
describes the accident :  " Well, I had just put my paint on
the scaffold.    The scaffold was on the ground at first, and I
put my paint on and pulled her up from the ground, up to
the signboard, right below the bottom, and tied my ropes
upon the uprights which was holding this roof that was,
below the sign to protect the people.    Then I got the
eighteen-foot ladder and leaned it against the signboard,
and I went upon the ladder and got upon the scaffold and
pulled up the east end about a foot, which gave me about
four feet of slack rope, and I made my hitch; that is, I tied

my ropes to the scaffold. Then I went to the west end and pulled that about the same height, and tied my ropes. I was just about going to turn around to go down again, when I heard something break, and I looked up and I seen the hook pulling through the board; that is, breaking a part of the board out, and coming down upon me. I didn't remember anything else after that. The top part of the hook pulled through. It came down upon a slant. The point didn't break through the sign; the top of the hook broke through it. At time of accident my ladder was about eighteen inches to two feet above the bottom of the board. I fell a distance of about fourteen or fifteen feet."

A witness who saw appellee fall testified that he fell backwards onto the street, with his face upwards. That the accident occurred by reason of one of the hooks, by which the ladder was suspended, pulling through at the junction of two of the upright pieces of which the bulletin board was constructed, and splitting out a piece in its descent through the boards, is fully proved; also that the hook would not have so pulled through the bulletin board had a strip or band been constructed along its upper end so as to protect the exposed ends of the pieces of which it was composed, and the accident would not have occurred, may reasonably be inferred from the evidence. The injuries of appellee, caused by his fall, are exceedingly serious and of a permanent character, deforming and disabling him.

There is no controversy as to the manner in which the accident occurred, nor is it contended that appellee, at the time of the accident, was not exercising ordinary care, or that the damages are excessive. Appellant's counsel contend that as the accident occurred in Wisconsin, the law of that state must govern, and that the law there, as applicable to certain questions arising in the case, is different from the law of this state applicable to the same questions. It was incumbent on appellant to prove that the law of Wisconsin differed, in the respects contended, from the law of this state. Chumasero v. Gilbert, 24 Ill. 293; Morris v. Wibaux, 159 Ill. 627, 651; Hakes v. Bank of Terre Haute, 164 Ill.

273. No such proof is contained in the bill of exceptions. Appellant's attorney offered in evidence twenty-five Wisconsin cases, giving the titles of the cases and the numbers and pages of the volumes of the reports where he claimed the cases were to be found, and this is all that is to be found in respect to the matter in the bill of exceptions. No opinion, or even extract from an opinion, of the Wisconsin court appears in the bill of exceptions. In order to have this court pass on the contention that the law of Wisconsin differs from the law of this state, in the respects mentioned by counsel in their argument, the proof that it so differs must appear in the bill of exceptions. Whether there is such difference is a question of fact, (cases cited *supra*,) and that evidence of the fact shall appear in the bill of exceptions is as necessary as in the case of any other fact. The evidence in support of this contention of counsel not being preserved in the bill of exceptions, we cannot consider it, but must consider the case on the presumption, which must prevail, in the absence of proof, that the law of Wisconsin applicable to the facts of the case, is the same as that of this state. Hake v. Bank of Terre Haute, *supra*, and cases cited.

Counsel for appellant further contend that complaint was not made by appellee, but by Fromm, and that the promise was not to appellee, but to Fromm; that the promise was limited to a reasonable time in which to do the necessary work, and that such time had expired before the accident happened; that appellee did not, in good faith, rely on the promise; that Fitzgerald had no authority to make the promise; that the evidence does not support the declaration, and that the court erred in rulings on evidence and instructions.

Appellee complained to his foreman, Fromm, to whom he was directed to report by Reich, who was fully authorized in the premises. He went with Fromm to Fitzgerald's office Tuesday evening when Fromm complained to Fitzgerald in appellee's presence, and, when Fromm, the next morning, again went to Fitzgerald's office, at the latter's

request, appellee accompanied him, heard his complaint and Fitzgerald's promise to have a band put on the bulletin board and his direction to Fromm to go back to work. Fitzgerald must have known that both Fromm and appellee were working on the board, and it was not necessary, as appellant's counsel contend, for appellee to directly complain to Fitzgerald, or for the latter to address appellee personally in promising to have a band put on the board. The complaint, by whomsoever made, was notice of the insecure condition of the board, and the promise made in appellee's presence and hearing, inured to his benefit, and he had a right to rely on it. In N. J. & N. Y. Ry. Co. v. Young, 49 Fed. Rep. 723, the plaintiff, a fireman in the employ of the company, sued the company for damages for personal injury suffered in a collision, which would not have occurred if an air brake had not been defective. A week before the collision the plaintiff had heard the engineer notify the company's superintendent that the air brake was out of repair, and heard the superintendent, through the engineer, order the company's repairer to put the brake in order. The Circuit Court of Appeals held that this evidence "authorized the jury to find that the plaintiff had been assured that the defendant would repair the air brake." In A., T. & S. F. R. R. Co. v. Sadler, the plaintiff was injured in using an old and defective spike maul. He belonged to the section gang. Two weeks before the accident Burkett and Ball, who also belonged to the section gang, complained of the defective and unsafe condition of the tool to the foreman of the gang, in the plaintiff's presence, and the foreman, in plaintiff's presence, promised to furnish new tools. Held, that the plaintiff had a right to rely on the promise. Appellee was not required personally to notify Fitzgerald of the defect in the board. The notice given by Fromm was sufficient. 2 Thompson on Neg., p. 1017, sec. 22; Perry v. Ricketts, 55 Ill. 234.

Brandt, a carpenter, called by appellant, testified that two men, in an hour and a half or two hours, could put a cap or band around the whole board, and counsel for appel-

lant argue that the time during which a promise to repair is binding, and may be relied on, is a reasonable time in which to do the work, and that, as the promise was made on Wednesday morning and the accident did not occur until about 4:30 o'clock the next Saturday afternoon, the reasonable time in which to do the work had expired long prior to the accident, and that it must be so held as matter of law. At the close of the evidence appellant's attorney moved the court to take the case from the jury, but, on that motion being overruled, asked and the court gave to the jury instructions submitting to them the question whether appellee continued to work on the board longer than a reasonable time for appellant to repair the defect in it, and instructing them that if appellee did so remain, he assumed the risk. Appellant's counsel having submitted the question to the jury as one of fact, is not in a position to urge that we should pass on it as one of law. In Hough v. Ry. Co., 100 U. S. 213, the court quotes with approval the following from Shear. & Redf. on Negligence: "There can be no doubt that when a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within a period which would not preclude all reasonable expectation that the promise might be kept." Ib. 225.

Appellee testified that he went back to work under the impression that Fitzgerald would fix the board; that had he not thought so he would not have continued the work. The evidence shows that very little work had been done on the board when Fromm left for Chicago at 2:30 o'clock Saturday, and that, while waiting for Fitzgerald to fix the board, the men adopted the temporary expedient of placing pieces of wood between the hooks and the back part of the board, which pieces were only kept in place by the pressure of the hooks while the scaffold was swung. The men had no hammer, nails, or other tools. The question whether the appellee, in the interval between the times of the prom-

ise and accident, might have reasonably expected fulfill-
ment of the promise, was a question for the jury on the
evidence, and we do not feel warranted in disturbing their
finding in that regard.    Was Fitzgerald authorized to make
the promise?  ·Appellant's attorney put in evidence a con-
tract of date September 27, 1897, between appellant and
the Cream City Bill Posting Company, of Wisconsin, for a
term of five years, in and by which, after reciting that the
parties desired " to enter into an agreement in relation to
erecting and maintaining bulletin boards for advertising
purposes in the city of Milwaukee and suburbs," it is pro-
vided, in substance, that both parties shall have the right
to procure contracts for advertising on such boards, in the
city of Milwaukee; that the Cream City Company shall
procure, by lease or otherwise, the boards required by such
contracts, and at such places shall erect and complete such
boards, and immediately notify appellant, who shall, there-
upon, cause to be painted on such boards the signs or adver-
tisements required by the contracts; that by the terms of
the contracts for advertising the money to be paid for the
advertising is to be made payable to, and collected by ap-
pellant, from which appellant shall pay to the Cream City
Company " all moneys necessarily expended by it in pro-
curing places whereon to erect said bulletin boards, and for
the cost of the material and labor actually used by said
Cream City Company in the erection of the boards," and
the amount of rentals paid for locations and actual repairs
done during the term to date of settlement, and appellant
shall then be entitled to retain, from said moneys received
on said contracts, the actual amount expended by it in
painting the boards; that the party procuring any contract
for advertising shall receive a commission of fifteen per cent
of the gross amount paid on the contract, which " shall be
paid after the actual expenses have been paid for the pro-
curing of places, erection and painting of bulletin boards,
as hereinbefore set forth, and of the moneys received from
time to time by said party of the first part, respectively,
and that after the payment of said expenses and of said

commission to the party who may be entitled thereto, then all moneys over and above the amount of said expenses and commission, which may be received by said party of the first part, shall be divided between the said parties hereto, in equal proportions, share and share alike." The sixth clause of the contract provides that above each bulletin board erected under the agreement a sign shall be placed " bearing the words, ' Gunning Fitzgerald System.' " This agreement was in force at the time of the accident. There can be no question that, by this agreement, appellant and the Cream City Bill Posting Co. became partners in the Milwaukee business. This is admitted by appellant's counsel in their reply argument. Being such, each was the agent of the other in the transaction of the partnership business, (Story on Agency, 9th ed., sec. 36,) and the erection, maintenance and repair of bulletin boards by the Cream City Bill Posting Co., were, in legal contemplation, the acts of the appellant. *Qui facit per alium, facit per se.* Necessarily, whichever corporation erected and maintained the boards, it had to do so by an agent, for so only can a corporation act. Fitzgerald testified that at the time in question he was manager of the Cream City Bill Posting Co., and was looking after the erection of boards, and after locations, for the Gunning System; that he had been engaged in building and directing the building of billboards for fifteen years, and that the board in question was erected by the authority of the Cream City Bill Posting Co. Not only was Fitzgerald authorized to make the promise, but the promise actually made by him was, in law, the promise of appellant's agent, the Cream City Bill Posting Co., and therefore, in legal contemplation, appellant's promise.

We find no error in the admission of evidence, and are of opinion that the evidence sustains the additional counts filed 'January 21, 1903. Appellant's counsel complain of the modification by the court of appellant's tenth and eleventh instructions and the refusal of its first, second, third, fourth, fifth, sixth, eighth and ninth instructions. The court did not err in modifying appellant's tenth and elev-

enth instructions. Instructions 1, 2, 3, 4, 5, 6, 8 and 9, were properly refused. Instruction 5 is substantially included in modified instruction 10.

We find no reversible error in the record, and the judgment will be affirmed.

*Affirmed.*