## Jewell Belting Company v. Hamilton Rubber Manufacturing Company.

### Gen. No. 11,970.

1. CONTRACT—*when action for breach of, lies, notwithstanding stipulation that defective merchandise will be replaced.* A contract which provides that defective merchandise will be replaced without expense to the purchaser does not require the purchaser to do more than notify the seller that the merchandise will not be accepted, and does not preclude the right of the purchaser to maintain an action for damages for the breach of such contract.

2. CONTRACT—*erroneous construction of, ground for reversal.* In an action at law an erroneous construction of a contract with respect to a material matter, is ground for reversal.

3. EVIDENCE—*when, as to cause of defect in merchandise, competent.* It is competent for a witness to testify that the crookedness of belting constituted a defect therein and to give the cause of such crookedness, notwithstanding he may not have seen the belting in question.

4. GENERAL OBJECTION—*what not reached by.* A general objection does not reach any impropriety in the form of the question objected to.

Action of assumpsit. Appeal from the Superior Court of Cook

County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed May 29, 1905.

**Statement by the Court.** Both the parties to this appeal are corporations. The appellant sued appellee in assumpsit. The declaration contains two counts and is as follows:

"Jewell Belting Company, a corporation, plaintiff, by Rogers & Mahoney, its attorneys, complains of Hamilton Rubber Company, a corporation, in a plea of trespass on the case on promises.

For that whereas heretofore, to-wit: on the 24th day of February, A. D. 1900, at Trenton, in the State of New Jersey, to-wit: Chicago, in the State of Illinois, the defendant entered into a certain contract with the plaintiff as follows, to-wit:

·'Feb. 24, 1900.

Hamilton Rubber Co., Trenton, N. J.

Gentlemen: Your several letters, telegrams and samples covering the question of 5″ 4-ply belting has been received and we have decided to place our order with you on the following conditions, which are practically the concentration of what you have already proposed to do.

We refer to the samples you have submitted, as follows:

The first or long sample which you sent to your Mr. Best, we called No. 1, and the second or short sample which you sent to us direct and which was received to-day, we refer to as No. 2.

FRICTION. The friction in the belt that you are to furnish, is to be in every respect equal to the friction in sample No. 2, both as to quantity and quality, and you will agree that this friction will not dry out or materially deteriorate during the ordinary life of the belt.

DUCK. The duck to be used in the belt is to be strictly thirty ounce 'Mt. Vernon' Cover. The cover on the belt shall be equal in every respect to the cover on your sample No. 2, but is to be of the same thickness as the cover on sample No. 1.

GUARANTEE. All belting furnished under our order is to be guaranteed to be perfect in material and in manufacture, and should it prove otherwise, it will be replaced by you without any expense to us.

FINISH. The finish of the belting we want light in color and as smooth as it is possible for you to make it. The finish of sample No. 1 which you submitted is satisfactory.

TERMS. Price of belt to be 75-5 per cent from list. Terms on our order to be four months net or 3 per cent thirty days from date of invoice; goods to be delivered.

PACKAGE. There are to be no marks on the belt itself, each roll to be burlaped separately and to contain stenciled marks on the outside showing length, width and ply and no other marks whatever.

Bill of lading to accompany each shipment and each invoice.

We shall retain in this case, both your samples No. 1 and No. 2, which have been carefully and properly marked upon which the goods you furnished on this order will be compared.

Under the above conditions, and with a clear understanding upon your part of what our requirements are, we place this order and we have no doubt from what you have written, both to us and to your Mr. Bast, who has had the kindness to show us one or two of your communications, but what the belt will be satisfactory.

Of course we are depending upon it being so.

We are pleased to place the order with you and we trust there will be no regrets either upon your part or our own.

Yours very truly,

JEWELL BELTING Co.,

Fred'k G. Davis, Mgr.'

In consideration that the said plaintiff at the special instance and request of the said defendant would buy of the said defendant certain goods, wares and merchandise called belting at and for the price therein mentioned to be paid by the plaintiff, wherein it, the defendant, undertook and

then and there faithfully promised the said plaintiff that all the goods, wares and merchandise called belting, so to be ordered and delivered under said contract would be of the kind and quality therein specified.

And the said plaintiff avers that it, confiding and relying upon the terms and conditions of said contract and undertaking of the said defendant, did afterwards at Trenton, in the State of New Jersey, to-wit: Chicago, in the State of Illinois, order of the defendant a large quantity of merchandise called belting and then and thereafter paid the defendant the said prices and sums mentioned in said contract for said goods; nevertheless the said defendant not regarding its promises and undertakings in said contract by it made on the contrary thereof the goods and merchandise called belting so delivered to the plaintiff under said contract was not of kind, quality or manufacture according to the terms and conditions of said contract and said goods were of no value to the plaintiff.

And whereas also afterwards, to-wit: on the day and year aforesaid, at Trenton, in the State of New Jersey, to-wit: at Chicago, in the State of Illinois, aforesaid, in consideration that the said plaintiff at the special instance and request of said defendant, had then and there bought of the defendant certain merchandise called belting to be manufactured by the defendant at and for a price or sum of money then agreed upon between the plaintiff and defendant, it, the said defendant, undertook and then and there faithfully promised the said plaintiff that the said last mentioned merchandise called belting should be sound and merchantable belting at the time of the sale and delivery of said belting, nevertheless the said defendant contriving and intending to injure the said plaintiff, did not regard its last mentioned promise and undertaking, but thereby deceived and defrauded the plaintiff of this, to-wit: that the said merchandise called belting at the time of the sale and delivery thereof, was not sound and merchantable belting, whereby the said last mentioned belting was of no value to the plaintiff, and the plain-

tiff avers that it paid for all of the belting sold and delivered to it.

To the damage to the plaintiff of $5,000, and therefore it brings suit."

The defendant pleaded the general issue and a set-off. A jury was empaneled and sworn to try the issues, but, after the trial had somewhat progressed, a juror was withdrawn by agreement of the parties, and the cause was submitted to the court for trial. The court found the issues for appellee, and assessed appellee's damages at the sum of $2,500, and rendered judgment on the finding. The contract relied on by appellant is evidenced by appellant's letter of February 24, 1900, set out at large in the declaration, and the following letter from appellee to appellant:

"Trenton, N. J., Feb. 27, 1900.
Jewell Belting Co., Chicago, Ill.

Gentlemen: We have your esteemed favor of the 24th inst., together with your order for belts. About the time your letter reached us Mr. Blodgett was due in Chicago, and we at once telegraphed him that we had received your order. We made up yesterday a sample roll of belting, which we sent last night by express.

In view of the possibility of a misunderstanding between us, we think it better to submit a sample roll made in a practical way rather than to depend on samples; which, though they were furnished of precisely the same stock as the roll which we sent you, and the same as we shall use in making up your order, the appearance of the sample does not always indicate precisely what the belt may be made up in the regular way; because it is not cured in the same press at the same pressure, and we do not have the chance to stretch it; hence our reason for delaying you long enough to see the sample roll, and not going ahead with the 20 rolls, which may not be exactly what you want. Nevertheless we believe we shall be able to please you in the matter of the execution of this order, and shall do our very best to do so.

We thank you for the order and for the confidence you

have placed in us in this matter, which we shall always endeavor to merit.

HAMILTON RUBBER MFG. CO."

March 1, 1900, appellant wrote to appellee the following letter:

"March 1st, 1900.

Hamilton Rubber Co., Trenton, N. J.

Gentlemen: Your letter of the 27th ult. received. Also sample roll 5″ 4-ply belting. We think that our letter of the 24th ult. to you on the subject of this belting is altogether explicit enough so as to warrant our expecting no deviation from the conditions under which the order was placed, and considering also the understanding the writer has had with your Mr. Blodgett as supplementary to the letter itself.

We believe that he personally understands what our requirements are and what will be expected.

JEWELL BELTING CO."

ROGERS & MAHONEY, and CHILTON P. WILSON, for appellant.

RITSHER, MONTGOMERY & HART, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Neither party contends that there was not an acceptance by appellee of appellant's proposition contained in its letter of February 24, 1900, and the goods in question were delivered by appellee to appellant after the letter of March 1, 1900, from appellant to appellee was written. The letters of February 24th and 27th were put in evidence, and the contract evidenced by them is clearly, as we think, that appellee would sell the 5-inch belting, which is the only belting mentioned in the letter of February 24th, to appellant, on its orders, according to the samples mentioned in appellant's letter of February 24, 1900, the belting, if not corresponding with the samples, to be replaced by appellee without expense to appellant. Appellant introduced no evidence of any claimed defect in the 5-inch belting, except that it was crooked, as compared with the samples, which the evidence tends to prove were straight.

The clause in the proposal of February 24, 1900, entitled "Guarantee" is: "All belting furnished under our order is to be guaranteed to be perfect in material and manufacture, and should it prove otherwise, it will be replaced."

Frederick G. Davis, appellant's manager, testified that he had, prior to 1900, twenty-one years experience in buying and selling rubber belting of the style of belting in dispute; that he had seen the samples furnished by appellee and had compared them with the belting shipped by appellee to appellant, and the samples, including the sample roll mentioned in appellee's letter of February 27, were straight, and that the belting was crooked; that Mr. Bast, appellee's manager, was present when witness examined the belting, and witness told him that the Case Company refused to put the belting out in that condition, and that Bast said to go ahead and put it out and that appellee would stand back of us. Also, that Bast examined one or more rolls of between 300 and 400 feet, and recognized that the belting was crooked, but said he did not believe that it was so crooked as to injure the running of it, and for us to go ahead and put it out. On another occasion Bast said that the belting had commenced to go wrong. The witness further testified that he examined a dozen rolls of the 5-inch belting.

Fred J. Rathbun testified that he examined seven or eight rolls of the 5-inch belting, containing 380 to 400 feet each, taken from different shipments, and that it was crooked, and when laid out on the floor it lay on a curve. Mr. Servis, appellee's vice-president, testified that the belting was all manufactured in precisely the same way.

Appellant is a jobber in rubber belting, and in compliance with the request of appellee, by its general manager, Mr. Bast, it put the 5-inch belting on the market, selling the most of it to the I. J. Case Threshing Machine Company, of Racine, Wisconsin. That Mr. Bast directed appellant to put the belting out and said appellee would stand back of it, is not contradicted by the evidence, and the legal effect of this is that appellee is estopped to claim an absolute acceptance by appellant of the belting. Appellee, by requesting ap-

pellant to put out the belting, in other words, to dispose of it in the market, waived its privilege of replacing objectionable belting, and left appellant free to pursue its legal remedy, precisely as if the contract contained no provision for replacing belting.

Mr. Davis, after testifying as stated, was asked: "Mr. Davis, what would such belting as you examined be worth on the market, at that time?" An objection was sustained to the question, after which the following question was asked the witness: "Mr. Davis, what would such belting as this 5 by 4 belting be worth in the Chicago market in 1900, in the condition in which you found it, when you examined these different rolls?" A general objection was made to each of the questions, when the court said: "I am sustaining the objection to these different questions on the ground that you have got to return them, according to contract, and give them an opportunity to replace them. If you lost the sale of belting by reason of its not being up to grade, then you would have an action on that, but you must follow the contract. They might find a better market than you could. You must live up to the contract; that is what a contract is for. You cannot go your own way." The court persisting in its ruling, the following occurred:

"Mr. Wilson: If your Honor is going to hold that these goods should be returned even under the contract, I would suggest that we simply withdraw a juror and submit it to the court.

Juror withdrawn, according to agreement.

Mr. Wilson: As I understand it, the difference between your Honor and myself was upon the question as to whether or not these goods should be returned.

The Court: Whether or not the contract should be complied with.

Mr. Wilson: Well, in that respect.

The Court: In that regard, yes. Suppose we proceed. I am against you on that proposition.

Mr. Wilson: All right, I will take an exception."

It having been admitted that the belting in question was

not returned, the ruling of the court necessarily excluded all evidence on the part of appellant tending to prove damages, to recover which was the object of the suit, and appellant would have saved time by resting after it had reserved an exception to the ruling.

We think the court erred in its construction of the contract. The contract provides that the belting "is to be guaranteed to be perfect in material and manufacture, and should it prove otherwise, it will be replaced by you, without any expense to us." This, certainly, did not require appellant to return belting which did not conform to the contract. The appellee, under such circumstances, contracted to substitute other belting, without expense to appellant, and appellant could not return the belting to Trenton, New Jersey, without expense. The utmost that can be said in respect to appellant's duty in the premises is, that it was incumbent on it to notify the appellee that the belting was inferior to that contracted for, and would not be accepted.

Grimoldby v. Wells, L. R. 10 Com. Pleas, 391, decided in 1875, is directly in point on the general question, whether when one sells goods by sample, and the goods, when delivered and inspected, are found not equal to the sample, it is incumbent on the vendee to return the goods. It was contended that such was the vendee's duty, in respect to which Lord Coleridge, C. J., says: "There is no want of authority to the contrary of the proposition contended for. In the case of Lucy v. Mouflet (1), both Martin, B., and Bramwell, B., expressly lay it down that it is not necessary to send back the goods in order to entitle the purchaser to reject them. It would be very hard if it were so. By the supposition the vendor has not complied with the contract, and has sent goods which as against the purchaser he had no right to send; why should he be entitled to impose upon the purchaser, who never bargained for such goods, and who has a right to reject them, the burden of sending them back, possibly for a considerable distance, at a considerable expense? No authority, as it seems to me, can be cited for such a proposition, and the reason and justice of the thing

are against it.   For these reasons it appears to me that the county court judge was wrong, and his judgment must be reversed." In the same case Brett, J., says: "The defendant has a right to inspect the goods, and it seems to me that where the sale is by sample, and inspection is to be at some place after delivery, the true proposition is, that if the purchaser on such inspection finds the goods are not equal to sample, or if they are, in fact, not equal to sample, he has a right to reject them then and there, and is not bound to do more than reject them.   There are several modes in which he may reject them, some of which are pointed out by Lord Chelmsford in Couston v. Chapman (1), in the passage which was cited from his judgment, and which, in my opinion, is to be read not as if cumulative, but as if alternative. He may, in fact, return them, or offer to return them; but it is sufficient, I think, and the more usual course is, to signify his rejection of them by stating that the goods are not according to contract and they are at the vendor's risk.   No particular form is essential; it is sufficient if he does any unequivocal act showing that he rejects them."   See, also, Underwood v. Wolf, 131 Ill. 425, 435-438, and cases there cited.   The last case is cited with approval in Wheelock v. Berkeley, 138 Ill. 153, 157, and in Morris v. Wibaux, 159 Ill. 627, 643.   So much with regard to the general question, when the contract is silent as to return.   In the present case the language of the contract is, of itself, a sufficient answer to the proposition that it was appellant's duty to return the belting.   The objection to the questions above quoted, put to the witness Davis, were general, specifying no ground of objection, and the sustaining of the objections was error.

Don C. Blanchard, after testifying that he was a manufacturer of rubber belting and had been for seventeen years, was asked these questions:

Q.   "Mr. Blanchard, suppose that rubber belting, say of 5-inch wide and 4 ply, when rolled out on the floor, was crooked belting, as a rubber manufacturer what would you say caused that defect?"

Q.   "Supposing, Mr. Blanchard, that rubber belting that

was 5 inches wide and 4 ply, when rolled out on the floor, was crooked, would or would you not say that was a defect in the belting ?"

The court sustained general objections to these questions, saying: "You cannot prove that by this witness, because he never saw the belting." Mr. Davis had testified that the samples were straight and the belting crooked, and it was not necessary that the witness Blanchard should, himself, have seen the belting, in order to testify as to the cause of the crookedness, and whether the crookedness was a defect. The first question is, perhaps, obnoxious to criticism in assuming that crookedness in belting is a defect, but this could not be reached by general objection.    We are not called upon to pass on the form of any question mentioned in this opinion.    Appellant's attorney offered to prove by the witness that the crookedness of the belting was caused in the manufacturing of it, to which offer an objection was sustained. We think the refusal to admit the evidence was error.

Appellant put in evidence the following letter:

"Chicago, Ill., Feb. 21, 1901.
Hamilton Rubber Co., Trenton, N. J.

Gentlemen:   As a means of reducing to writing the understanding had between your Mr. Blodgett and our Mr. Davis with regard to the 5-inch 4-ply rubber belting furnished last year on our orders for the J. I. Case Threshing Machine Co., and upon which there has been claims made by the said J. I. Case T. M. Co. upon us for allowances, not as yet specified, by reason of the belts being, in their estimation, defective in sundry particulars.

With a view to our being able to settle the matter and pay to you such invoices as may be purchased from you from time to time and owing to our desire to continue our relations in a most harmonious way, it is agreed between us, that we pay you your account in full, as it stands upon our books on this date, reserving, however, the sum of $2,500, which sum shall be considered bearing directly upon the settlement of the J. I. Case Threshing Machine Co. account,

it being understood, however, that we shall use our utmost endeavors to settle with the J. I. Case T. M. Co. to the very best of our ability in your interest, and when such settlement is arrived at we will make a detailed report to you of such settlement and the conditions concerning it, and at that time we will take up further the allowance that you shall make on such belting.

It is understood further that in this settlement with the J. I. Case Co. we shall endeavor to have returned all belting in their hands of your make, as we shall endeavor to have returned all other goods which we furnished them and which they may have on hand at the time of settlement.

Every feature of the transaction in all its details has been gone over between Mr. Davis and Mr. Blodgett, and we shall take pleasure in advising you of any future developments pertaining to this particular transaction.

We will endeavor to make the earliest possible settlement of this claim, with a view to closing our books at the earliest date possible on the balance above referred to.

Very truly yours,

JEWELL BELTING CO.,

By Frederick G. Davis.

Accepted.

HAMILTON RUBBER CO.,

By........................"

The evidence is that the most of the belting in question was shipped by appellant to the J. I. Case Threshing Machine Company, of Racine, Wisconsin.

Inasmuch as there seems to be some difference between counsel as to the effect of the agreement of February 21, we think it proper to state our views in respect to it.

It is impliedly admitted by the agreement that $2,500 of the purchase price of the belting had not been paid by appellant, and it was agreed that appellant would reserve that amount, pending which reservation it was to use its utmost endeavors to settle with the Case Company, and, if it should succeed in making a settlement with that company, it was

to report to appellee, and then the parties were to take up the question of what allowance appellee should make to appellant.    There is no provision in the agreement as to what should be done in the event that appellant should not succeed in its efforts to procure a settlement; but both parties evidently acted upon the hypothesis that a settlement between appellant and the Case Company might be made, and we do not think the agreement can be understood as meaning that, if such settlement should be found impossible, appellant would be bound to abandon its claim for damages. The agreement is, in effect, that negotiations between the parties should be suspended pending appellant's efforts to settle with the Case Company.    The evidence is that the appellant found it impossible to settle with that company; that the company not only refused to settle, but threatened to sue appellant.    After it was demonstrated that no settlement could be made with the Case Company, appellant could rightfully sue for the damages which it claimed, or appellee for the unpaid balance of the purchase price of the belting. Practically, both parties have so construed the agreement— appellant, by suing for damages, and appellee by pleading a set-off, which is a cross action, for the unpaid balance of the price of the belting.

There is a conflict in the evidence as to whether appellee furnished to appellant any samples of the one and one-half and two-inch belting, and a conflict between counsel as to whether appellant did or not abandon its claim for damages in respect to that belting.    These are questions which, on account of the conclusion we have reached, we do not deem it expedient to discuss.    The fact that the court construed the contract between the parties erroneously, to appellant's prejudice, is, of itself, reversible error.    Iroquois Furnace Co. v. Wilkin Man'g Co., 181 Ill. 582, 596; Bright v. Kenefick, 69 Ill. App. 43.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*