## Jewell Belting Company, Appellant, v. Hamilton Rubber Manufacturing Company, Appellee.

### Gen. No. 16,871.

RES JUDICATA—*effect of former opinion.* The opinion of the appellate court upon a previous appeal is binding alike upon the parties to the cause and the appellate court on a subsequent appeal.

Appeal from the Superior Court of Cook county; the HON. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed on remittitur. Opinion filed May 21, 1912. Rehearing denied June 4, 1912.

CHILTON P. WILSON, for appellant.

MONTGOMERY, HART & SMITH, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This case is before us on an appeal from a judgment of the Superior Court of Cook County, wherein the jury denied appellant's claim against appellee and found in favor of appellee's claim, or set-off, against appellant.

The controversy grows out of a contract between

the parties, under which the Jewell Company was to purchase from the Hamilton Company certain belting. The contract provided that all belting furnished thereunder should be guaranteed to be perfect in material and manufacture, and "should it prove otherwise, it will be replaced" without expense to the Jewell Company. Under this contract a large quantity of belting was supplied to the Jewell Company, which it claimed was crooked and, therefore, imperfect and not merchantable. Representatives of the Hamilton Company, who were present when the alleged defect was discovered at the time the belting was being received and examined, are said to have conceded that the belting was imperfect, but instructed the Jewell Company to "go ahead and send it out," stating that if this were done, the Hamilton Company "would stand back of the belt," as it had been guaranteed. Thereupon the Jewell Company sent out the belting,—almost the entire quantity going to one customer—the J. I. Case Threshing Machine Company, of Racine, Wisconsin, which company some time later claimed that the belting was so defective that it would not pay for it, and threatened suit against the Jewell Company for damages.

The written contract between the parties was made in February, 1900, and the belting in controversy was delivered during the spring and summer of that year, various payments being made from time to time on account thereof. During the summer, autumn, and winter following, the Jewell Company was insisting that the belting in question was not in conformity with the contract, and seeking a settlement with the Hamilton Company. These negotiations resulted in a contract for a settlement between the parties, dated February 21, 1901. Pursuant to the contract then made, the Jewell Company paid its account in full, with the exception of $2,500, which sum it reserved, pending a final settlement with the Hamilton Company. Having failed to secure a satisfactory settlement

the Jewell Company brought suit against the Hamilton Company in the Superior Court of Cook County, to recover back $2,611.14, which it had paid on account of the belting. In June, 1904, a trial by the court without a jury resulted in a judgment in favor of the Hamilton Company for $2,500. This judgment was reversed by this court in May, 1905, and the cause remanded for a new trial. (Jewell Belting Company v. Hamilton Rubber Manufacturing Co., 121 Ill. App. 13.) The second trial was had before a jury in February, 1910, with the result above stated.

The previous decision of the Appellate Court contains a full statement of the facts, to which reference is hereby made. In its opinion the court also construed the letter, or contract, between the parties, dated February 21, 1901, and the law of the case as there declared, including the construction of the contract in question, is binding upon the parties and upon this court in the present consideration of the case.

Briefly state, the contention of appellant now is that the belting delivered to it was found to be crooked and unmerchantable, and, therefore, not in comformity with the contract between it and the Hamilton Company, and that, accordingly, it had the right to reject the belting, and, in fact, did so; that upon an inspection of the belting, the representatives of appellee practically conceded that it was defective, but still desired appellant to send it out and dispose of it; that in doing so, it acted solely as the representative of appellee, and that at no time did it accept the belting or treat it as its own; that not having accepted the belting, the title never passed to it, and, accordingly, it never was indebted to the Hamilton Company for it, and was, therefore, entitled to recover back the money which it had paid on account of the belting.

On the other hand, appellee's position is that, while it strenuously insists that the belting was not defective, yet even if it were so, appellant accepted and dis-

posed of it, and is liable to the Hamilton Company therefor, subjects to any claim it might have by way of damages it had suffered on account of the belting not being up to the requirements of the contract.

The alleged defect of which appellant complains was that the belting, when unrolled, curved to one side, and could not be made to lie straight. Only a relatively small portion of the belting was inspected and found to be thus crooked, or curved, and the testimony as to.the extent to which it curved, tended to show a curve from about two feet to eight or ten feet in a hundred feet of length, and appellee insists that the evidence sustained its contention that the alleged defect was entirely unimportant and did not seriously, if at all, effect the utility or merchantability of the belting.

We have carefully examined the testimony adduced at the last trial, and have also carefully considered the contract between the parties of February 21, 1901, and we are of the opinion that appellant's contention, that it did not accept the belting, and was, therefore, entitled to recover back the money which it had paid on account thereof, cannot be sustained.

It appears that the Case Company returned a small portion of the belting in question to the Jewell Company, and this company sent it back to the Hamilton Company, and received credit for the full amount thus returned; and it also appears that, during the months, during which there was a controversy between appellant and appellee over the matter, appellant was making payments to appellee from time to time, but was insisting that the belting was not up to sample, but was defective. Indeed, appellant, in its brief, where contending that appellee knew the belting was crooked, says that "portions of the belting from time to time were returned by appellant to appellee, and appellee indicated a disposition to receive it all back."

The conduct of the parties and the written agreement of February 21, 1901, seem to us entirely in-

consistent with appellant's contention that it did not accept the belting in question, and that all it did in the premises was at the instance of, and was for the benefit of, appellee. In the first place, there was a guarantee in the written contract between the parties that all belting furnished under it should be perfect in material and manufacture, and if it proved otherwise it was to be "replaced" without expense. If, in fact, the belting when received, was found to be defective, appellant might have declined to accept it and would have been entitled, under the contract, to have such belting "replaced;" or, under the conditions shown, it might elect to accept the belting, use or dispose of it to the best advantage possible, and upon settling for it with appellee, appellant would be entitled to an off-set, rebate, or "allowance," as the parties phrased it in their settlement contract, of such an amount as would indemnify it for any damage it sustained in consequence. That the latter course was the one adopted, seems to us clear. The language of the contract, dated February 21, 1901, indicates not only that the Case Company was making claim against the Jewell Company "for allowances," but it is specifically stated that, at the time of the final settlement between appellant and appellee, there should be taken up further "the *allowance* that you (appellee) shall make on such belting." It is impossible to believe that the Jewell Company would have continued to make payments from time to time, upon the belting it was receiving and about which it was complaining, until it had actually paid over $2,600 before the date of this contract of settlement, and then retain $2,500 of the remaining amount owed by it, if, as a matter of fact, it had not accepted the belting at all, and was, for that reason, in no way indebted therefor. No reason appears why it should continue paying from time to time for merchandise, which it had not accepted, and which, therefore, did not belong to it.

From the record before us, it appears that appellant received over 40,000 feet of the belting complained of, nearly all of which it disposed of to the Case Company; of this a small amount (aggregating less than 600 feet), was returned by the Case Company to the Jewell Company, and by the Jewell Company to the Hamilton Company, who duly credited appellant's account therefor. What was done with the remainder of the belting,—the extent to which it was damaged by the alleged crookedness or curving said to be apparent in the portions examined, if at all, and the consequent damage which the Jewell Company suffered by reason thereof,—the record before us does not disclose. Mr. Davis, manager for appellant, testified that he sent out the belting in anticipation that it would render satisfactory service, but nowhere does the record show what service the belting did render, or was capable of rendering, or what was its actual value.

In construing the settlement agreement of February 21, 1901, the Appellate Court said:

"It is impliedly admitted by the agreement that $2,500 of the purchase price of the belting had not been paid by appellant, and it was agreed that appellant would reserve that amount, pending which reservation it was to use its utmost endeavors to settle with the Case Company, and, if it should succeed in making a settlement with that company, it was to report to appellee and then the parties were to take up the question of what allowance appellee should make to appellant. There is no provision in the agreement as to what should be done in the event that appellant should not succeed in its efforts to procure a settlement; but both parties evidently acted upon the hypothesis that a settlement between appellant and the Case Company might be made, and we do not think the agreement can be understood as meaning that, if such settlement should be found impossible, appellant would be bound to abandon its claim for damages.

The agreement is, in effect, that negotiations between the parties should be suspended pending appellant's efforts to settle with the Case Company. The evidence is that the appellant found it impossible to settle with that company; that the company not only refused to settle, but threatened to sue appellant. After it was demonstrated that no settlement could be made with the Case Company, *appellant could rightfully sue for the damages which it claimed, or appellee for the unpaid balance of the purchase price of the belting.* Practically, both parties have so construed the agreement—appellant, by suing for damages, and appellee, by pleading a set-off, which is a cross-action for the unpaid balance of the price of the belting.''

The cause was remanded for a further trial in conformity with the views thus expressed. Appellant then had the opportunity of showing the extent to which it had suffered damage by reason of the alleged defects in the belting which it had received. A careful inspection of the record convinces us that appellant failed to furnish the jury with any sufficient data upon which the jury could base a verdict in its favor. Appellant is claiming that the goods were defective. Even this is contested, and upon that question the evidence is conflicting, but, if it be granted, appellant could not retain the goods without paying for them. If they were defective, and did not meet with the conditions of the warranty, the Jewell Company had its remedy,—it could either have insisted upon the goods being "replaced," or, under the circumstances shown in this record, used them and then in an action brought against it by the Hamilton Company to recover for the belting, it could recoup its damages.

Appellant complains of some of the instructions, and also of certain rulings of the court with respect to the admission of evidence; but we do not find any reversible error in relation thereto. In the view we

take of the case, and our conclusion that no other verdict except one for appellee for some amount could have been rendered by the jury upon the evidence, the alleged errors in the instructions complained of are unimportant. Nor do we find any substantial error in the court's ruling upon the evidence. Appellant's contention here is,—as it was apparently in the court below,—that its acts in the premises did not constitute an acceptance of the belting in question, and that the title to the property continued in the Hamilton Company, but this contention we are unable to sustain.

We think, however, the verdict of the jury is too large. The amount claimed by the Hamilton Company was $2,497.70, and the verdict was for $3,613.98, thus showing that the jury must have included in its verdict interest upon the amount of the claim. We do not find any authority in law for the including of interest upon the claim down to the date of judgment, but a judgment bears interest. This judgment was entered March 12, 1910, and, with interest, the amount owing on the 12th of this month would be $2,768.28. If the appellee will remit $845.70 within five days, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded for a new trial.

*Affirmed on remittitur.*